■ In the Matter of ANTONIO EE., Appellant, v SCHOHARIE COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent. (Proceeding No. 1.) In the Matter of KILA DD. and Others, Children Alleged to be Permanently Neglected. SCHOHARIE COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; ANTONIO EE., Appellant. (Proceeding No. 2.) In the Matter of ANTONIO EE., Appellant, v SCHOHARIE COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent. (Proceeding No. 3.) [831 NYS2d 270]—

Kane, J. Appeals (1) from an order of the Family Court of Schoharie County (Hummel, J.), entered January 24, 2006, which dismissed petitioner's application, in proceeding No. 1 pursuant to Family Ct Act article 10, to modify a prior order of visitation, (2) from an order of said court, entered March 31, 2006, which granted petitioner's application, in proceeding No. 2 pursuant to Social Services Law § 384-b, to adjudicate respondent's children to be permanently neglected, and terminated respondent's parental rights, and (3) from an order of said court, entered April 4, 2006, which dismissed petitioner's application, in proceeding No. 3, pursuant to Family Ct Act article 10, to hold respondent in violation of a prior order of visitation.

Family Court previously found that Antonio EE. (hereinafter respondent) abused and neglected his three children (*Matter of*

*Kila DD.*, 28 AD3d 805 [2006]). The Schoharie County Department of Social Services (hereinafter petitioner) filed a petition seeking to terminate respondent's parental rights based on permanent neglect. Respondent filed two petitions alleging that petitioner violated the visitation order and attempting to modify the visitation order. The court found that the children were permanently neglected, terminated respondent's parental rights and dismissed his modification and violation petitions. Respondent appeals.

In a permanent neglect proceeding, the threshold inquiry is whether the agency proved that it made diligent efforts to strengthen and encourage the parent-child relationship (*see Matter of Gregory B.*, 74 NY2d 77, 86 [1989]; *Matter of Sheila G.*, 61 NY2d 368, 386-387 [1984]; *Matter of Yvonne N.*, 6 AD3d 769, 770 [2004], *lv denied* 3 NY3d 604 [2004]). The next step is determining whether the parent fulfilled his or her duty to both maintain contact with the children and develop a realistic plan for their future; permanent neglect may be found upon a default of either duty (*see* Social Services Law § 384-b [7]; *Matter of Gregory B., supra* at 87).

As part of its diligent efforts, petitioner arranged for visitation and phone calls between respondent and the two youngest children at the state correctional facility where respondent was incarcerated (*cf. Matter of Amanda C.*, 281 AD2d 714, 716 [2001], *lv denied* 96 NY2d 714 [2001]). A court order did not permit any contact between respondent and the oldest child. Petitioner also provided respondent information and updates regarding the children's progress, except for the oldest child who did not want respondent to receive any information about her. Because respondent is incarcerated and not eligible for release until 2022, petitioner had no obligation to work toward reunification of the children with him.

Despite petitioner's efforts to strengthen and encourage the parent-child relationship and assist respondent in developing a realistic plan for the children's future, respondent failed to cooperate with petitioner on more than one occasion. Respondent engaged in inappropriate conversations with the children in violation of reasonable rules established by petitioner. Respondent inappropriately communicated with the caseworker by sending her intimidating letters and asking her to have a nonprofessional relationship with him. Respondent also refused to sign releases sent to him by petitioner which would have permitted petitioner to disclose information to relatives who could be potential placement resources for the children. Finally, respondent revoked a release which permitted petitioner to

obtain information from the Department of Correctional Services about respondent's success in programming which was relevant to facilitating contact with the children. Where, as here, an incarcerated parent fails to cooperate with agency efforts to assist the parent in planning for the children's future and arranging visits with the children, the agency is not required to demonstrate diligent efforts (*see* Social Services Law § 384-b [7] [e] [ii]; *Matter of Yvonne N., supra* at 770).

Although respondent kept regular contact with his children through the court-ordered visits, phone calls and letters, the statute requires both contact and planning for their future. He remained obligated to plan for their future despite his incarceration (*see Matter of Curtis N.*, 290 AD2d 755, 757 [2002], *lv dismissed* 97 NY2d 749 [2002]; *Matter of Abdul W.*, 224 AD2d 875, 876 [1996]). Respondent permanently neglected his children by failing to develop a realistic and feasible plan for them. He maintained during the instant proceedings that he always wanted the children to be reunited with his ex-wife, who was named as a respondent in the permanent neglect matter and who subsequently executed a judicial surrender. In prior proceedings, however, respondent argued that Family Court should not permit her to have visitation with the children. Correspondence from respondent to petitioner also shows that he felt the children should remain in the foster home where they were placed at that time, until they could be reunited with him when he was released from prison as a result of his pending appeal.* His back-up plan, both in his correspondence and at the hearing, was for the children to remain in foster care until his oldest daughter, who was 17 years old at the time of the hearing, turned 18, at which time she could take custody of the two younger children. He had not discussed this plan with his oldest daughter, had not had contact with her in years and was unaware of her willingness or ability to care for her siblings. At one point respondent did provide petitioner with a list of relatives to investigate for possible placement of the children. This list was provided in the correspondence wherein respondent stated that the children should remain in their current foster care placement. Respondent provided conflicting testimony regarding his contact with these relatives and, when requested, he never provided updated contact information for them. Despite his testimony that one relative indicated an intent to check on the children's circumstances, none of these relatives ever filed a custody petition or contacted petitioner to investigate the children's well-being or express an interest in caring for them.

---

* This Court recently affirmed respondent's criminal conviction.

These changing, inconsistent and unworkable goals demonstrate that respondent failed to meaningfully and realistically plan for the future of his children (*see Matter of Abdul W., supra* at 876).

The children's foster parents agreed to adopt the two younger children, who have been in foster care in excess of six years, and the oldest would not be adopted because she was almost 18 and chose not to consent. Under the circumstances, termination of respondent's parental rights was in the best interests of the children. Based on the termination of his parental rights, his violation and modification petitions were properly dismissed as moot. Respondent's remaining contentions have been reviewed and found lacking in merit.

Cardona, P.J., Spain, Carpinello and Rose, JJ., concur. Ordered that the orders are affirmed, without costs.