■ In the Matter of LAWRENCE KK., a Child Alleged to be Permanently Neglected. ALBANY COUNTY DEPARTMENT FOR CHILDREN, YOUTH AND FAMILIES, Respondent; LAWRENCE LL., Appellant. [898 NYS2d 339]—

Lahtinen, J. Appeals from two orders of the Family Court of Albany County (Duggan, J.), entered May 5, 2009, which, among other things, granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate respondent's child to be permanently neglected, and terminated respondent's parental rights.

In June 2006, petitioner sought, pursuant to Social Services Law § 398, to have Family Court declare as destitute the subject child, who was born in 2003 and has Down syndrome. The child's mother had died in 2006. The maternal grandmother took temporary custody, but had been unable to care for the child. Respondent, the child's father, had been incarcerated since December 2004 on convictions for drug-related crimes in

both Pennsylvania and New York, and he has a conditional release date of April 2010 with a maximum sentence extending to April 2012. The petition was granted and the child was put in petitioner's custody. The child was placed with a foster parent who cares for and has adopted other special needs children. In September 2007, petitioner commenced this proceeding to terminate respondent's parental rights based on permanent neglect. Following a fact-finding hearing, Family Court found the child to be permanently neglected. A dispositional hearing ensued after which Family Court terminated respondent's parental rights, freeing the child for adoption. Respondent appeals.

"The threshold inquiry in a permanent neglect proceeding is whether petitioner established by clear and convincing evidence that it made diligent efforts to encourage and strengthen the parent-child relationship" (*Matter of Alycia P.*, 24 AD3d 1119, 1120 [2005] [citations omitted]). The record reflects extensive contact between petitioner's caseworkers and respondent. He was informed of the need of developing a workable plan for the child's future. The caseworker offered assistance in helping respondent plan for the child. After respondent supplied names of relatives and friends who might be able to care for the child during his incarceration, petitioner attempted to contact all such individuals and explored whether anyone would be willing and suitable to provide the needed care. Correspondence in the record reveals that respondent was kept informed of the child's health and progress. In light of the child's young age and acute special needs, as well as the distance to respondent's places of incarceration (including being in prison out of state during some of the relevant time), visitation was not required (*see Matter of Anastasia FF.*, 66 AD3d 1185, 1186 [2009], *lv denied* 13 NY3d 716 [2010]). While petitioner could have been more diligent in providing telephonic contact between respondent and the child, the caseworker stated that the child was essentially nonverbal and, in any event, telephone calls were arranged starting in late 2006 or early 2007. There is ample evidence in the record to support Family Court's finding of diligent efforts by petitioner.

"The next step is determining whether the parent fulfilled his or her duty to both maintain contact with the child[ ] and develop a realistic plan for [the child's] future; permanent neglect may be found upon a default of either duty" (*Matter of Antonio EE. v Schoharie County Dept. of Social Servs.*, 38 AD3d 944, 945 [2007] [citations omitted], *lv denied* 8 NY3d 813 [2007]). "Whether or not the planning requirement will be

deemed satisfied will . . . vary depending on the facts and circumstances" (*Matter of Gregory B.*, 74 NY2d 77, 87 [1989]), and the unique challenges presented by a child with special needs is a germane consideration (*see Matter of George U.*, 195 AD2d 718, 719-720 [1993]). Respondent had about four to six years remaining on his prison sentences when the child came into the care of petitioner. At petitioner's request, respondent supplied petitioner's caseworker with the names of relatives and friends as possible resources to care for the child. However, the caseworker's investigation revealed that these individuals were unsuitable for a variety of reasons. For example, one had a substance abuse history and health issues. Two had child protective services histories. While some expressed initial interest, they subsequently affirmatively declined or simply stopped responding to efforts to contact them. Others could not be reached or, if reached, did not respond. No suitable caregiver was identified by respondent for this special needs child, and merely leaving the child in foster care for four to six years was not consistent with the goal of avoiding prolonged foster care. Although respondent arguably showed a good faith effort in supplying names of possible caregivers, " '[g]ood faith alone is not enough; the plan must be realistic and feasible' " (*Matter of Gregory B.*, 74 NY2d at 87, quoting *Matter of Star Leslie W.*, 63 NY2d 136, 143 [1984]). We agree with Family Court that petitioner met its burden of establishing the lack of a realistic plan by respondent for the child (*see Matter of Antonio EE. v Schoharie County Dept. of Social Servs.*, 38 AD3d at 946-947; *Matter of Joseph Jerome H.*, 224 AD2d 224, 225 [1996]).

Mercure, J.P., Spain, Rose and Stein, JJ., concur. Ordered that the orders are affirmed, without costs.