■ In the Matter of MARQUISE JJ., a Child Alleged to be Permanently Neglected. CORTLAND COUNTY DEPARTMENT OF SO-CIAL SERVICES, Respondent; JAMIE KK., Appellant. [938 NYS2d 211]—

Garry, J.

Petitioner's child support unit began attempting to locate respondent in early 2008.[1] The child was removed from the mother's care in August 2008 and placed in a foster home where he continues to reside. In October 2008, petitioner located respondent at a correctional facility in Queens County and advised him of the child's foster care placement. Shortly thereaf-

---

1. Respondent's paternity was later established by an order of filiation entered in Cortland County in May 2009.

ter, the aunt telephoned petitioner's caseworker on respondent's behalf, but advised that she was not available to act as a resource for the child at that time. In November 2008, respondent telephoned petitioner to ask that the child be placed with his girlfriend and to request telephone contact with the child. Petitioner's caseworker arranged for respondent to call the child at the foster home. He did so between November 2008 and February 2009, but, after being transferred to a new facility that required inmates to place collect calls, rather than paying for them through inmate accounts, respondent ceased making phone calls to the child. In July 2009, respondent wrote to petitioner advising that he would be incarcerated for two years[2] and requesting that the child be placed with the aunt. The caseworker followed up, but the aunt again declined to accept the child's placement. In February 2010, respondent wrote to petitioner advising that he had been moved to a different correctional facility seven months earlier. He sent two cards to the child in early 2010, but made no further contact thereafter with either the child or petitioner.

Petitioner commenced this permanent neglect proceeding in September 2010, seeking to terminate respondent's parental rights.[3] Family Court conducted a fact-finding hearing and determined that the child was permanently neglected. After a dispositional hearing, respondent's parental rights were terminated. Respondent appeals.

In seeking to terminate respondent's parental rights on the ground of permanent neglect, petitioner was required to demonstrate by clear and convincing evidence that he "failed to maintain contact with or plan for the future of [the] child for a period of one year after the child came into the custody of an authorized agency notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship" (*Matter of Star Leslie W.*, 63 NY2d 136, 140 [1984]; *see* Social Services Law § 384-b [7] [a]; *Matter of Hailey ZZ. [Ricky ZZ.]*, 85 AD3d 1265, 1266 [2011], *lv granted* 17 NY3d 709 [2011]; *Matter of Lawrence KK. [Lawrence LL.]*, 72 AD3d 1233, 1234 [2010], *lv denied* 14 NY3d 713 [2010]). Family Court correctly determined that petitioner made the requisite diligent efforts to facilitate respondent's relationship with the child. Even before respondent was adjudicated the child's father, petitioner sought him

---

2. Respondent had initially advised petitioner's caseworker that he would be incarcerated for only two months.

3. A separate proceeding was commenced against the mother, who consented in January 2011 to the entry of an order finding permanent neglect and a suspended judgment for a period of one year.

out, notified him of the child's placement in foster care, regularly sent the child's permanency reports, initiated correspondence to inquire about respondent's situation and plans, and responded to his inquiries. When possible, petitioner facilitated telephone contact between respondent and the child; when such contact was not feasible, petitioner's caseworker encouraged respondent to maintain contact with the child by mail. Although respondent now contends that petitioner should have arranged for the child to visit him during his incarceration, he did not request such visits, nor were they required; in light of the child's age and the distance to the correctional facility, visitation was not in the child's best interests (*see* Social Services Law § 384-b [7] [f] [5]; *Matter of Kaiden AA. [John BB.]*, 81 AD3d 1209, 1210 [2011]; *Matter of Anastasia FF.*, 66 AD3d 1185, 1186 [2009], *lv denied* 13 NY3d 716 [2010]). Thus, petitioner established by clear and convincing evidence that it made "affirmative, repeated and meaningful efforts to restore the parent-child relationship" (*Matter of Alycia P.*, 24 AD3d 1119, 1120 [2005]; *see Matter of Victorious LL. [Jonathan LL.]*, 81 AD3d 1088, 1090 [2011], *lv denied* 16 NY3d 714 [2011]).

Next, petitioner was required to show that, despite its diligent efforts, respondent failed to maintain contact with the child or to plan for his future (*see* Social Services Law § 384-b [7] [a], [c]; *Matter of Jasmine F. [Jeffrey G.]*, 74 AD3d 1396, 1398 [2010]). Respondent's incarceration did not excuse him from the obligation to develop a realistic plan for the child (*see Matter of Antonio EE. v Schoharie County Dept. of Social Servs.*, 38 AD3d 944, 946-947 [2007], *lv denied* 8 NY3d 813 [2007]; *Matter of Curtis N.*, 290 AD2d 755, 757 [2002], *lv dismissed* 97 NY2d 749 [2002]). Respondent made some attempts to maintain contact with the child, as outlined above; however, these efforts were sporadic and inconsistent. The only telephone contact with the child occurred during a brief period of several months, and respondent mailed only two cards to the child.[4] He initiated contact with petitioner only once by telephone and twice by letter, and he failed to provide petitioner with prompt, accurate information as to the length and locations of his incarceration. Further, he was unable to formulate timely and realistic plans for the child's placement pending his release (*see Matter of Hailey ZZ. [Ricky ZZ.]*, 85 AD3d at 1266). His only suggested resources were the aunt, who twice declined to care for the

---

4. Respondent testified that he also maintained communication with the child by corresponding with the mother, but clarified that he did so by such means as asking the mother to greet the child for him rather than by enclosing cards or notes written directly to the child.

child, and a girlfriend who had no relationship with the child and was identified only by a first name. Accordingly, we find no basis to disturb Family Court's conclusion that respondent permanently neglected the child by failing to plan for his future (*see Matter of Trestin T. [Shawn U.]*, 82 AD3d 1535, 1537 [2011], *lv denied* 17 NY3d 704 [2011]; *Matter of Lawrence KK. [Lawrence LL.]*, 72 AD3d at 1235).

Finally, respondent contends that Family Court should have granted a suspended judgment and placed the child with his aunt pending his release from prison. A dispositional order following an adjudication of permanent neglect must be based on the child's best interests, and there is no presumption that those interests will be promoted by any particular disposition (*see* Family Ct Act §§ 631, 633; *Matter of Star Leslie W.*, 63 NY2d at 147-148; *Matter of George M.*, 48 AD3d 926, 929 [2008]). A suspended judgment may be granted if the court determines that "it is in the best interests of the child to allow the parent additional time to improve parenting skills and demonstrate his or her fitness to care for the child" (*Matter of Kayla KK. [Tracy LL.]*, 68 AD3d 1207, 1208 [2009], *lv denied* 14 NY3d 707 [2010]; *see* Family Ct Act § 631 [b]; § 633). However, the length of such a suspension is limited to one year, with a one-year extension to be granted only in "exceptional circumstances" (Family Ct Act § 633 [b]). Here, the earliest date that respondent could potentially be released is December 2012, more than two years after the entry of the dispositional order, and his maximum release date is in December 2013. Even if a suspended judgment were allowed for such a protracted period, it would not be in the child's best interests to add several years to the temporary foster care placement that has already extended throughout much of his life (*see Matter of Hailey ZZ. [Ricky ZZ.]*, 85 AD3d at 1266-1267). The goal of permanency would not be served by placement with respondent's aunt, who testified at the dispositional hearing that she could not afford to adopt the child and was only interested in accepting him as a foster child.[5] Further, the child had not seen the aunt in several years and no longer had a relationship with her, and placing him in her home several hours away from Cortland County would have interfered with his weekly visits with his mother. Finally, the child was

---

5. The aunt filed a custody petition in December 2010, several months after commencement of this termination proceeding. Family Court dismissed the petition when the aunt failed to attend the initial appearance, allegedly because of a snowstorm. However, the aunt appeared the following week for the dispositional hearing and testified that she had previously been certified as a foster parent and was willing to regain that certification in order to accept temporary placement of the child.

reportedly performing well at school, participating in sports and counseling, and thriving in his foster home, where he had developed close relationships with the foster parents as well as a former foster child whom they had adopted. The foster mother testified that they would "gladly" adopt the child if he were freed for adoption. Accordingly, Family Court's determination that termination of respondent's parental rights was in the child's best interests is supported by a sound and substantial basis in the record (*see Matter of Nicole K. [Melissa K.]*, 85 AD3d 1231, 1233 [2011]).

Peters, J.P., Malone Jr., Stein and Egan Jr., JJ., concur. Ordered that the order is affirmed, without costs.