Stein, J.
Respondent is the father of the five children at issue here (born in 1999, 2001, 2003, 2004 and 2006). Respondent was incarcerated in October 2005. In April 2009, while respondent was still incarcerated, the children were removed from the custody of their mother, with her consent, and placed in foster care with maternal relatives. Respondent admittedly knew about the children’s placement. Although respondent was released from prison in December 2009, he was reincarcerated on a parole violation in May 2010 and remained incarcerated until May 2011.
In March 2011, petitioner commenced this proceeding pursuant to Social Services Law § 384-b against, among others, respondent alleging permanent neglect. A fact-finding hearing was held in May 2011 solely with respect to respondent, after which Family Court determined that respondent had permanently neglected the children. Respondent was again released from prison shortly thereafter. Following a dispositional hearing in July 2011 — at which respondent was present but did not testify — Family Court terminated respondent’s parental rights. Respondent now appeals and we affirm.
In a permanent neglect proceeding, the threshold inquiry is whether the agency established, by clear and convincing evidence, that it made “diligent efforts to encourage and strengthen the parental relationship” (Social Services Law § 384-b [7] [a]; see Matter of Jyashia RR. [John VV.], 92 AD3d 982, 983 [2012]; *937 Matter of Trestin T [Shawn U.], 82 AD3d 1535, 1536 [2011], lv denied 17 NY3d 704 [2011]). Generally, when a parent is not incarcerated, the agency fulfills its obligation by “offering appropriate services, such as counseling and treatment opportunities, arranging supervised visitation and creating a service plan to move towards unification, and encouraging] the parent’s participation” (Matter of James X., 37 AD3d 1003, 1006 [2007]; see Social Services Law § 384-b [7] [f]; Matter of Jyashia RR. [John VV.], 92 AD3d at 983). The agency’s duty to make diligent efforts is not obviated by a parent’s incarceration (see generally Social Services Law § 384-b [7] [f]). However, recognizing that incarceration creates some impediments, both to the agency and to the parent, we have held that an agency may fulfill its duty to make diligent efforts to encourage and strengthen the parental relationship of an incarcerated parent by, for example, apprising the incarcerated parent of the child’s well-being, developing an appropriate service plan, investigating possible placement of the child with relatives suggested by the parent, responding to the parent’s inquiries and facilitating telephone contact between the parent and child (see Matter of Marquise JJ. [Jamie KK.], 91 AD3d 1137, 1138-1139 [2012], lv denied 19 NY3d 801 [2012]; Matter of Hailey ZZ. [Ricky ZZ.], 85 AD3d 1265, 1266 [2011], affd 19 NY3d 422 [2012]; Matter of Trestin T. [Shawn U.], 82 AD3d at 1536; Matter of Kaiden AA. [John BB.], 81 AD3d 1209, 1209-1210 [2011]).
Respondent first argues that petitioner failed to prove that it made the requisite diligent efforts to reunite him with the children because it had no contact with respondent during his periods of incarceration. We disagree. Although petitioner concedes its lack of contact with respondent while he was incarcerated, this is not a case where the incarceration persisted for the entire duration of the children’s foster care placement (compare Matter of Shi’ann FF., 47 AD3d 1133 [2008]) and, significantly, respondent does not deny the efforts made by petitioner during the six months in which he was released from incarceration prior to the commencement of this proceeding. The evidence adduced at the fact-finding hearing established that, upon his release from prison in December 2009, respondent called John Berry — petitioner’s caseworker who was assigned to the children since 2005 — and they met the following day. During the ensuing six months, Berry arranged for respondent to have regular visitation with the children — at various locations and under various circumstances — which eventually took place in respondent’s apartment. Because respondent’s one-bedroom efficiency-style apartment was not suitable for the children to stay overnight, he encouraged respondent to obtain *938 employment and a larger apartment so that overnight visitation and, ultimately, permanency planning could occur. In addition, Berry was in contact with respondent’s parole officer, discussed with respondent the terms and conditions of his parole and attempted to assist respondent in complying with such conditions. Berry also recommended appropriate classes and educational programs and provided enrollment information therefor. Although respondent initially attempted to comply with Berry’s recommendations, he was unable to follow through due to his reincarceration in May 2010 for violating the conditions of his parole. On the record before us, we conclude that Family Court correctly determined that the foregoing — considered in combination with respondent’s awareness of the children’s placement in foster care with relatives during his periods of incarceration, his ability to regularly communicate with the children and his failure to seek visitation while incarcerated — satisfied petitioner’s statutory duty to make diligent efforts to facilitate respondent’s relationship with the children (see Matter of Marquise JJ. [Jamie KK.], 91 AD3d at 1139).
Nor do we find any error in Family Court’s finding that respondent permanently neglected the children. In this regard, the agency was required to establish, by clear and convincing evidence, that respondent failed “substantially and continuously or repeatedly to maintain contact with or plan for the future of the child[ren], although physically and financially able to do so” for a period of at least one year or 15 out of the most recent 22 months following the date the children were taken into petitioner’s care (Social Services Law § 384-b [7] [a]; see Matter of Hailey ZZ. [Ricky ZZ.], 19 NY3d 422, 429 [2012]; Matter of Marquise JJ. [Jamie KK.], 91 AD3d at 1138).* Planning for a child’s future entails taking the steps necessary to provide “an adequate, stable home and parental care for the child within a period of time which is reasonable under the financial circumstances available to the parent” (Social Services Law § 384-b [7] [c]). The parent’s plan must be “realistic and feasible” (Social Services Law § 384-b [7] [c]; see Matter of Trestin T. [Shawn U.], 82 AD3d at 1536-1537). Although the court must consider the “special circumstances” of an incarcerated parent (Social Services Law § 384-b [7] [a]), long-term foster care is not considered to be a feasible plan (see Matter of Trestin T. [Shawn U.], 82 AD3d at 1537; Matter of Kaiden AA. [John BB.], 81 AD3d at 1210-1211).
Here, respondent testified that, prior to the filing of the *939 instant petition, his plan included visitation with the children. Berry testified that respondent’s only plan while he remained in prison was for the children to return to their mother’s care and thereafter, upon his release, to “become involved and ... be a good father” and have the children returned to his care. Respondent had an opportunity to engage in services necessary to become a resource for the children and/or otherwise make a meaningful plan for their future care while he was released from incarceration, but he squandered that opportunity by violating the conditions of his parole by using drugs and having contact with the children’s mother. At the time of the fact-finding hearing, respondent was still incarcerated and unavailable to care for the children. Nor did he propose any meaningful alternative. According deference to Family Court’s credibility determinations, we are of the view that petitioner met its burden of establishing that respondent permanently neglected the children by failing to make a realistic and feasible plan for their future, as respondent had, essentially, no plan in place (see Matter of Marquise JJ. [Jamie KK.], 91 AD3d at 1139-1140; Matter of Trestin T. [Shawn U.], 82 AD3d at 1537; Matter of Kaiden AA. [John BB.], 81 AD3d at 1210-1211).
We also reject respondent’s contention that Family Court should have entered a suspended judgment in lieu of terminating his parental rights (see Family Ct Act § 631). The evidence adduced at the dispositional hearing demonstrated that respondent had been released from prison for approximately two months, had not yet completed a substance abuse evaluation, as required by the conditions of his parole, and had not yet obtained his own apartment. By this time, the children had been in foster care for over two years — of which respondent had been incarcerated for approximately 20 months — were doing well in the foster home and the foster parents wished to adopt them. Under these circumstances and according deference to Family Court (see Matter of James X., 37 AD3d at 1007), we find that the determination that it was in the children’s best interests to terminate respondent’s parental rights is supported by a sound and substantial basis in the record (see e.g. Matter of Marquise JJ. [Jamie KK.], 91 AD3d at 1140-1141; Matter of Trestin T. [Shawn U.], 82 AD3d at 1537).
Finally, in light of the Court of Appeals’ recent decision in Matter of Hailey ZZ. (Ricky ZZ.) (19 NY3d 422 [2012], supra), it is now beyond question that Family Court does not have the authority to grant respondent’s request for posttermination visitation (see also Matter of Alexa L. [Nilza L.], 79 AD3d 1290, 1293 [2010]).
*940 Mercure, J.P., Rose, Lahtinen and McCarthy, JJ., concur. Ordered that the order is affirmed, without costs.

 Inasmuch as the record demonstrates respondent’s ongoing contact with the children, the issue is whether he adequately planned for their future.