Stein, J.
Appeals from two orders of the Family Court of Schenectady County (Powers, J.), entered October 15, 2012 and *1189 October 18, 2012, which granted petitioner’s application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject children to be permanently neglected, and terminated respondent’s parental rights.
Respondent is the father of Joannis P. (born 2005), Carmen E (born 2006) and Joseph E (born 2008), each of whom was removed from his care in August 2009 as a result of his relapse into drug abuse. At that time, respondent was on probation and was required to, among other things, report to his probation officer and submit to random searches and drug tests. Respondent admitted to using heroin and his probation officer directed him to report to an inpatient drug treatment facility on September 1, 2009. Although he agreed to receive treatment, he failed to report to the facility and a probation violation petition was filed. In January 2010, he was arrested, his probation was revoked and he was thereafter incarcerated.
In the meantime, the children remained in petitioner’s care and were placed in foster homes; Carmen and Joseph resided in one home[1] and, due to behavior issues, Joannis was placed in a separate, therapeutic foster home. A petition to terminate respondent’s parental rights based on abandonment was filed, but was dismissed following a fact-finding hearing.[2] Nonetheless, petitioner filed the subject petition in December 2010, alleging that respondent had permanently neglected his children by, among other things, failing to plan for their future.[3] After a fact-finding hearing, Family Court determined that respondent had permanently neglected the children and, following a dispositional hearing, terminated his parental rights. Respondent now appeals, and we affirm.
As a threshold matter, petitioner was required to prove by clear and convincing evidence that it made diligent efforts to encourage and strengthen the relationship between respondent and the children (see Social Services Law § 384-b [7] [a]; Matter of Johanna M. [John L.], 103 AD3d 949, 949-950 [2013], lv denied 21 NY3d 855 [2013]; Matter of James J. [James K.], 97 AD3d 936, 936-937 [2012]). With respect to a parent who is not incarcerated, diligent efforts generally “ ‘include counseling, *1190 making suitable arrangements for visitation, providing assistance to the parent [ ] to resolve or ameliorate the problems preventing discharge of the child[ren] to [the parent’s] care and advising the parent at appropriate intervals of the child[ren]’s progress and development” (Matter of Hailey ZZ. [Ricky ZZ.], 19 NY3d 422, 429 [2012], quoting Matter of Star Leslie W., 63 NY2d 136, 142 [1984]; see Social Services Law § 384-b [7] [f]; Matter of James J. [James K.], 97 AD3d at 937). On the other hand, “[w]here a parent is incarcerated, petitioner’s duty to facilitate the parental relationship may be satisfied by, among other things, informing the parent of the children’s well-being and progress, responding to the parent’s inquiries, investigating relatives suggested by the parent as placement resources, and facilitating communication between the children and the parent” (Matter of Charles K. [Charles L.], 100 AD3d 1308, 1308 [2012]; accord Matter of Arianna I. [Roger I.], 100 AD3d 1281, 1285 [2012]; Matter of James J. [James K.], 97 AD3d at 937).
Here, petitioner’s caseworker testified that, after the children’s removal and before respondent was incarcerated on the probation violation, she met with respondent on multiple occasions, arranged for visits with his children and provided him with updates as to their placement and their progress. Although respondent lost contact with the caseworker for extended periods of time after his failure to appear at the treatment facility, the caseworker attempted to communicate with respondent through letters, visits to his home and telephone calls. Moreover, during respondent’s subsequent incarceration, the caseworker met with him on several occasions to discuss the permanency of the children and their progress. She also brought the children for visits at the correctional facilities where respondent was located and sent respondent pictures of the children, report cards and status updates. In addition, the caseworker explored whether respondent’s sister was a possible custodial option.[4] In light of the foregoing, we agree with Family Court’s determination that petitioner met its burden of establishing that it made the requisite diligent efforts to facilitate respondent’s relationship with the children (see Matter of Johanna M. [John L.], 103 AD3d at 950; Matter of James J. [James K.], 97 AD3d at 937; Matter of Marquise JJ. [Jamie KK.], 91 AD3d 1137, 1138-1139 [2012], lv denied 19 NY3d 801 [2012]).[5]
Next, petitioner was required to demonstrate, “by clear and *1191 convincing evidence, that respondent failed ‘substantially and continuously or repeatedly to maintain contact with or plan for the future of the child[ren], although physically and financially able to do so’ for a period of at least one year or 15 out of the most recent 22 months following the date the children were taken into petitioner’s care” (Matter of James J. [James K.], 97 AD3d at 938, quoting Social Services Law § 384-b [7] [a]; see Matter of Hailey ZZ. [Rickey ZZ.], 19 NY3d at 429). Notably, respondent’s incarceration did not obviate his obligation “to develop a realistic plan for the children’s future” (Matter of Johanna M. [John L.], 103 AD3d at 0950; see Matter of James J. [James K.], 97 AD3d at 938; Matter of Hannah T. [Joshua U.], 95 AD3d 1609, 1610 [2012], lv denied 19 NY3d 813 [2012]; Matter of Marquise JJ. [Jamie KK.], 91 AD3d at 1139-1140), and the record supports Family Court’s finding that he failed to do so.
After the children were removed from respondent’s home, he refused to enter the treatment facility recommended by his probation officer, failed to maintain contact with petitioner for four out of the five months immediately preceding his incarceration and missed numerous visits with his children. During his incarceration, respondent’s only plan for the children was that they be returned to his care, even though it was expected that he would be incarcerated for 2 to 6 years. Respondent’s belated suggestion — made more than a year after the children’s removal — that his girlfriend take custody of them was neither realistic nor viable.[6] Therefore, we discern no basis to disturb Family Court’s finding that respondent permanently neglected the children by failing to realistically plan for their future for at least one year following their removal (see Matter of Trestin T. [Shawn U.], 82 AD3d 1535, 1537 [2011], lv denied 17 NY3d 704 [2011]).
Finally, we reject respondent’s contention that Family Court should have entered a suspended judgment in lieu of terminating his parental rights. The evidence adduced at the dispositional hearing demonstrated that the children had been in the same *1192 foster homes for over a year, had bonded with their foster parents, who wished to adopt them, and were thriving in their care. The two sets of foster parents knew each other and arranged weekly visits between the children. Moreover, although respondent was released from prison in May 2011 and was living with his girlfriend in her apartment, there was some question as to whether he was receiving the appropriate level of treatment for his substance abuse problems, and Family Court appropriately took into account his history of relapse, which was the cause of the children’s placement in foster care. In fact, this was not the first time the children had been placed in petitioner’s custody. In our view, notwithstanding respondent’s love for and desire to resume custody of the children, a sound and substantial basis exists for Family Court’s determination that the children should not remain in limbo and that it was in their best interests to terminate respondent’s parental rights and free them for adoption (see Matter of James J. [James K.], 97 AD3d at 939; Matter of Hannah T. [Joshua U.], 95 AD3d at 1611; Matter of Marquise JJ. [Jamie KK.], 91 AD3d at 1137; Matter of Kellcie NN. [Sarah NN.], 85 AD3d 1251, 1253 [2011]).
Lahtinen, J.P., McCarthy and Egan Jr., JJ., concur. Ordered that the orders are affirmed, without costs.

. The children’s half sibling — not a child of respondent — resides in the same foster home as Carmen and Joseph.

. Petitioner filed a similar petition against the children’s mother. Family Court ultimately found that the mother had abandoned the children and terminated her parental rights.

. The children’s maternal grandmother commenced a proceeding seeking custody/visitation of Joannis and the children’s half sibling. Family Court ultimately dismissed the grandmother’s petition and it is not at issue on this appeal.

. The sister initially approached the caseworker about taking the children, but ultimately changed her mind.

. We are unpersuaded by the argument made at the fact-finding hearing — and again on this appeal — that diligent efforts were not demonstrated *1191 because petitioner did not investigate his then girlfriend as a possible suitable custodian for the children. This person was not a relative, certified foster parent or even respondent’s girlfriend when the children were removed from respondent’s care and was described as a family friend who had babysat for the children on a few occasions several years earlier. Under these circumstances, we agree with petitioner that the failure to explore this person as a possible option for assuming custody of the children did not preclude a finding that petitioner exercised the requisite diligent efforts (see Matter of Hailey ZZ. [Ricky ZZ.], 85 AD3d 1265, 1266 [2011], affd 19 NY3d 422 [2012]).

. The girlfriend filed a custody petition, but Family Court dismissed it.