*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  January 12, 2017          520964
                                                520982

_____

In the Matter of BAYLEY W.
    and Another, Alleged to be
    Permanently Neglected
    Children.

DELAWARE COUNTY DEPARTMENT OF
    SOCIAL SERVICES,                    MEMORANDUM AND ORDER
                    Respondent;

PATRICK K.,

                    Appellant.
_____

Calendar Date:  November 22, 2016

Before:  Garry, J.P., Egan Jr., Rose, Clark and Mulvey, JJ.

_____

        Teresa C. Mulliken, Harpersfield, for appellant.

        D. Jeremy Rase, Delaware County Department of Social
Services, Delhi, for respondent.

        Larisa Obolensky, Delhi, attorney for the children.

_____

Garry, J.P.

        Appeals from two orders of the Family Court of Delaware
County (Becker, J.), entered January 2, 2015 and April 9, 2015,
which, in a proceeding pursuant to Social Services Law § 384-b,
granted petitioner's motion to revoke a suspended judgment, and
terminated respondent's parental rights.

Respondent is the biological father of two children (born in 2007 and 2008), who have been in petitioner's care, residing with the same foster family since July 2009. Respondent was incarcerated in 2010 on several drug-related convictions with an initial parole hearing date in 2022, a conditional release date in 2025, and a maximum expiration date in 2028.[1] In June 2011, he entered into a stipulation by which he made admissions of permanent neglect and consented to the entry of orders of fact-finding and disposition with a one-year suspended judgment. Respondent's admissions included his acknowledgment that the children's mother was not an appropriate resource for the care of the children at that time and that he had not provided petitioner with the names of any other appropriate resource. He further acknowledged that his failure to identify an appropriate resource who was ready, willing and able to care for the children could constitute a violation of the terms and conditions of the suspended judgment if the mother did not become able to act as such a resource.

In April 2012, the children's mother voluntarily surrendered her rights to the children. Approximately 10 days later, petitioner moved to revoke the suspended judgment based upon respondent's failure to identify a resource for the children's care other than the mother. Family Court granted the motion, revoked the suspended judgment and terminated respondent's parental rights. Upon respondent's appeal, this Court reversed the order and remitted the matter for an evidentiary hearing on certain issues related to respondent's compliance with the stipulation (116 AD3d 1109 [2014]). Following the hearing, Family Court found that respondent had failed to timely provide petitioner with the names of appropriate resources, that this failure constituted a failure to plan for the children's future, and that the children were permanently neglected. After a dispositional hearing, the court issued a

---

[1] Respondent testified that he hoped to be admitted into a clemency program that could make him eligible for parole in 2017. However, he did not know whether he was eligible for the program or when this determination would be made.

second order that terminated respondent's parental rights and freed the children for adoption. Respondent appeals from both orders.

We reject respondent's challenge to Family Court's findings related to his compliance with the stipulation. When this matter was previously before this Court, we found factual issues as to whether respondent had provided petitioner with the names of appropriate resources for the children's care, "when he did so and whether he did so in a timely manner" (id. at 1110). At the subsequent evidentiary hearing, petitioner's caseworker testified that, between the entry of the suspended judgment in June 2011 and petitioner's motion to revoke it in April 2012, respondent regularly participated by telephone in permanency planning meetings and received copies of reports and plans that notified him of increasing problems rendering the mother unable to act as a resource for the children's care. Nevertheless, respondent failed to identify any resource other than the mother until late April or early May 2012, after petitioner had filed its application to revoke the suspended judgment. At that point, respondent provided the caseworker with the names of two friends who had visited and babysat for the children before they were placed in petitioner's care. The caseworker testified that petitioner thereafter determined that these individuals were not appropriate resources because they were not biologically related to the children, had not formed meaningful relationships with them before they entered petitioner's care, and had never visited or contacted them thereafter. The caseworker further testified that, contrary to respondent's claim, he had never mentioned his mother (hereinafter the grandmother) as a potential resource. However, she stated that a previous caseworker had contacted the grandmother and had ascertained that she was not willing to act as a resource because of her age.

Respondent gave a contradictory account, testifying that he had verbally provided the names of the two individuals and the grandmother to the caseworker as potential resources when the caseworker visited him in prison in February or March 2012 — that is, before the mother surrendered her parental rights and petitioner moved to revoke the suspended judgment. However, our

review of the record evidence reveals no support for respondent's claim. The permanency reports and family service assessments that cover the pertinent time period – including a February 2012 report that describes the caseworker's prison meeting with respondent – consistently state that respondent did not identify any resource other than the mother before petitioner moved to revoke the suspended judgment. Further, the record includes no indication that respondent or his counsel, both of whom received copies of the reports, ever objected to these entries or sought to have them corrected.

Respondent argues that the caseworker's file, which she did not bring to the hearing, may contain notes supporting his version of events, and that his motion for an adjournment to obtain the file should therefore have been granted. However, as Family Court found, respondent and his counsel had ample opportunity to obtain the file through discovery before the hearing and did not do so; further, we find that the caseworker's testimony as to the relevant times and dates, based upon her memory, was reasonably specific and certain. Accordingly, the court did not abuse its discretion in refusing to incur further delay by adjourning the hearing.

This Court defers to Family Court's credibility assessments (see e.g. Matter of Hazel OO. [Roseanne OO.], 133 AD3d 1126, 1128 [2015]), and we find no reason to disturb Family Court's resolution of the conflicting testimony as to when respondent provided petitioner with the resources' names. Further, even if the court had credited respondent's testimony as to the timing, the stipulation required him to identify a resource who was appropriate in petitioner's judgment to care for the children. Nothing in respondent's testimony contradicted petitioner's assessment that the grandmother was not appropriate because of her age, and that respondent's friends lacked any meaningful relationship with the children and were therefore inappropriate to act as resources given that the children were strongly bonded with the foster family. Respondent made no showing that these conclusions were in error, nor did he show that anything prevented him from providing the names of his resources at an earlier time, i.e., before the children became so closely bonded

with the foster family. Accordingly, we find that the court's determination that respondent failed to comply with the terms of the suspended judgment by timely supplying the names of appropriate resources is supported by a sound and substantial basis in the record (see Matter of Marquise JJ. [Brithany JJ.], 103 AD3d 937, 938 [2013], lv denied 21 NY3d 859 [2013]).[2]

In challenging the dispositional order, respondent claims that petitioner failed to make the requisite diligent efforts to facilitate his relationship with the children, in that petitioner did not arrange prison visits during his incarceration and then unfairly relied upon the children's resulting unfamiliarity with him as a basis for terminating his parental rights. This argument is not properly before this Court, as respondent consented to the entry of the suspended judgment and failed thereafter to move to vacate his stipulated admissions of permanent neglect (see Matter of Jason H. [Lisa K.], 118 AD3d 1066, 1067 [2014]; Matter of Abbigail EE. [Elizabeth EE.], 106 AD3d 1205, 1206-1207 [2013]; Matter of Aidan D., 58 AD3d 906, 908 [2009]). We would have found no merit in the claim even if it had been preserved, as petitioner is not required to facilitate visitation with an incarcerated parent when it is not in the children's best interests because of such factors as distance or the children's youth (see Social Services Law § 384-b [7] [f] [5]; Matter of Marquise JJ. [Jamie KK.], 91 AD3d 1137, 1139 [2012], lv denied 19 NY3d 801 [2012]). On the facts presented here, had the issue been properly presented, we would have found no failure on petitioner's part.

The sole concern at a dispositional hearing following a finding of permanent neglect is the best interests of the child (see Matter of Star Leslie W., 63 NY2d 136, 147-148 [1984]). Although respondent sought to maintain contact with the children

_____

[2]    Respondent's claim that the requirement that he identify an "appropriate" resource violated his due process rights is not subject to appellate review, as the suspended judgment was entered upon his consent (see Matter of Jonathan NN. [Michelle OO.], 90 AD3d 1161, 1164 [2011], lv denied 18 NY3d 808 [2012]).

by such measures as sending them regular correspondence and participating by telephone in permanency hearings, his incarceration will prevent him from caring for them for many years.  The record reveals that they have spent most of their lives living without permanence in petitioner's custody, that they are thriving in the care of the foster parents with whom they have continuously resided since 2009, that they are closely bonded with the foster family, and that the foster parents wish to adopt them.  Family Court's determination to terminate respondent's parental rights and free the children for adoption was in their best interests (see Matter of Marquise JJ. [Jamie KK.], 91 AD3d at 1140-1141; Matter of Hailey ZZ. [Ricky ZZ.], 85 AD3d 1265, 1266-1267 [2011], affd 19 NY3d 422 [2012]; Matter of Trestin T. [Shawn U.], 82 AD3d 1535, 1537 [2011], lv denied 17 NY3d 704 [2011]).

Egan Jr., Rose, Clark and Mulvey, JJ., concur.


ORDERED that the orders are affirmed, without costs.




ENTER:

Robert D. Mayberger
Clerk of the Court