Matter of Ronaldo D. (Jose C.) (2019 NY Slip Op 53948)





Matter of Ronaldo D. (Jose C.)


2019 NY Slip Op 53948


Decided on November 27, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 27, 2019

527271

[*1]In the Matter of Ronaldo D., Alleged to be a Permanently Neglected Child. Chemung County Department of Social Services, Respondent; Jose C., Appellant.

Calendar Date: October 8, 2019

Before: Garry, P.J., Egan Jr., Mulvey and Aarons, JJ.


Paul J. Connolly, Delmar, for appellant.
Chemung County Department of Social Services, Elmira (Donald S. Thomson of counsel), for respondent.
Paul Sartori, Elmira, attorney for the child.
Chemung County Department of Social Services, Elmira (Donald S. Thomson of counsel), for respondent.


Paul Sartori, Elmira, attorney for the child.



Mulvey, J.
Appeal from an order of the Family Court of Chemung County (Tarantelli, J.), entered July 11, 2018, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject child to be permanently neglected.
Respondent is the father of the subject child (born in 2012). More than a year after the child had been in petitioner's care, petitioner commenced this proceeding alleging, as amended, that respondent's parental rights should be terminated because he permanently neglected the child.[FN1] After a fact-finding hearing, Family Court found that respondent had permanently neglected the child. Following a dispositional hearing, the court issued an order terminating respondent's parental rights and committing the guardianship and custody of the child to petitioner on the condition that the child be made available for adoption by the child's foster parents. Respondent appeals from the fact-finding order.[FN2]
Petitioner established by clear and convincing evidence that respondent permanently neglected the child. "A permanently neglected child is one who is in the care of an authorized agency and whose parent has failed, for a period of more than one year following the date such child came into the care of an authorized agency, substantially and continuously or repeatedly to maintain contact with or plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship" (Matter of Brielle UU. [Brandon UU.], 167 AD3d 1169, 1170 [2018] [internal quotation marks and citations omitted]; see Social Services Law § 384-b [7] [a]). "The threshold inquiry in a permanent neglect proceeding is whether [the] petitioner established by clear and convincing evidence that it made diligent efforts to encourage and strengthen the parent-child relationship" (Matter of Alycia P., 24 AD3d 1119, 1120 [2005] [citations omitted]; see Matter of Brielle UU. [Brandon UU.], 167 AD3d at 1170). Although petitioning agencies are generally not relieved of this obligation by a parent's incarceration (see Matter of James J. [James K.], 97 AD3d 936, 937 [2012]; see generally Social Services Law § 384-b [7] [f]), a petitioner need not demonstrate diligent efforts where an "incarcerated parent has failed on more than one occasion while incarcerated to cooperate with an authorized agency in its efforts to assist such parent to plan for the future of the child" (Social Services Law § 384-b [7] [e] [ii]; see Matter of Sasha R., 246 AD2d 1, 6 [1998]).
Petitioner's caseworker testified that, between November 2015 and October 2017, petitioner sent respondent seven letters providing him with information about the foster care process and possible impacts to his parental rights, and attempting to determine his postrelease plans, as well as his current and future plans for the child's care. The caseworker testified that respondent was supplied with postage-paid return envelopes, but petitioner never received a response in writing or by telephone. Although respondent testified that he only received two or three letters from petitioner, that they did not include such envelopes and that he returned one questionnaire to petitioner, Family Court did not credit this testimony, and we defer to that court's credibility determinations. As the credible evidence showed that respondent failed to cooperate with petitioner because he did not respond to any of its multiple inquiries regarding his plans for the child, petitioner was relieved of the obligation to establish that it exercised "diligent efforts . . . to encourage and strengthen the parental relationship" (Social Services Law § 384-b [7] [e]; see Matter of Anthony R., 239 AD2d 586, 587 [1997], lv denied 90 NY2d 808 [1997]).
A parent has a duty to both maintain contact with the child and develop a realistic plan for the child's future, and a default of either duty may result in a finding of permanent neglect (see Social Services Law § 384-b [7] [a]; Matter of Antonio EE. v Schoharie County Dept. of Social Servs., 38 AD3d 944, 945 [2007], lv denied 8 NY3d 813 [2007]; Matter of Elijah NN., 20 AD3d 728, 729 [2005]). The "planning requirement contemplates that the parent shall take such steps as are necessary to provide a home that is adequate and stable, under the financial circumstances existing, within a reasonable period of time. Good faith alone is not enough: the plan must be realistic and feasible" (Matter of Star Leslie W., 63 NY2d 136, 143 [1984]; see Social Services Law § 384-b [7] [c]). Respondent's only plan was for the child to live with respondent's mother (hereinafter the grandmother) until respondent was able to care for the child himself upon his release from prison, which was scheduled for more than two years after his initial testimony at the fact-finding hearing. Although the child had lived with the grandmother after he was initially removed from his mother, the parties consented to the child going to live with the foster mother, where he remained at the time of the hearing more than two years later. Respondent and the grandmother testified that respondent had been urging her for at least a year to file for custody of the child, yet she did not do so until the first day of the fact-finding hearing. The record contains some evidence that the reason that the child left the grandmother's custody and moved in with the foster parents was because the grandmother was unable to care for the child and his half sister, with whom the child has always lived. Considering the circumstances, petitioner proved by clear and convincing evidence that respondent permanently neglected the child because he never developed a realistic and feasible plan for the child's future (see Matter of Hailey ZZ. [Ricky ZZ.], 19 NY3d 422, 430-431 [2012]; Matter of Kaylee JJ. [Jennifer KK.], 159 AD3d 1077, 1079-1080 [2018]).
Garry, P.J., Egan Jr. and Aarons, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The mother has surrendered her parental rights to the child.

Footnote 2: Although no appeal lies as of right from a fact-finding order in a permanent neglect proceeding (see Matter of Keadden W. [Hope Y.], 165 AD3d 1506, 1507 [2018], lv denied 32 NY3d 914 [2019]; Matter of Alyssa L. [Deborah K.], 93 AD3d 1083, 1084-1085 [2012]), we treat that notice of appeal as an application for leave to appeal from the fact-finding order and exercise our discretion to grant the application (see Matter of Derick L. [Michael L.], 166 AD3d 1325, 1326 [2018], lv denied 32 NY3d 915 [2019]; Matter of Lamar LL. [Loreal MM.], 86 AD3d 680, 680 n 1 [2011], lv denied 17 NY3d 712 [2011]; see also Family Ct Act § 1112 [a]).