*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  January 8, 2015                    518251
_____

In the Matter of BRITINY U.,
    Alleged to be a Permanently
    Neglected Child.

ULSTER COUNTY DEPARTMENT OF
    SOCIAL SERVICES,
                        Respondent;

TARA S.,
                    Appellant.

(Proceeding No. 1.)
_____          MEMORANDUM AND ORDER

In the Matter of MANUEL U.,
    Alleged to be a Permanently
    Neglected Child.

ULSTER COUNTY DEPARTMENT OF
    SOCIAL SERVICES,
                        Respondent;

TARA S.,
                    Appellant.

(Proceeding No. 2.)
_____


Calendar Date:  November 21, 2014

Before:  McCarthy, J.P., Garry, Lynch, Devine and Clark, JJ.

                    _____


        Marshall Nadan, Kingston, for appellant.

        Heather Harp, Ulster County Department of Social Services,
Kingston, for respondent.

Ted J. Stein, Woodstock, attorney for the children.

_____

McCarthy, J.P.

Appeals from two orders of the Family Court of Ulster County (McGinty, J.), entered November 25, 2013, which granted petitioner's applications, in two proceedings pursuant to Social Services Law § 384-b, to adjudicate the subject children to be permanently neglected, and terminated respondent's parental rights.

In November 2011, petitioner removed respondent's two children (born in 2003 and 2009) from her care upon her arrest and incarceration for the rape of a 12-year-old child. She was ultimately convicted of rape in the second degree and sentenced to three years in prison followed by 10 years of postrelease supervision. In December 2012, petitioner filed permanent neglect petitions for both children. Following hearings, Family Court adjudged the children to be permanently neglected by respondent and terminated her parental rights. Respondent appeals.

Initially, the petitions complied with the statutory time prerequisite. Permanent neglect can only be established if a child is in the care of an authorized agency for, as relevant here, one year and the parent fails to maintain contact or plan for the child's future during that time period (see Social Services Law § 384-b [7] [a]). Respondent incorrectly argues that the time when a parent is incarcerated does not count toward that one-year time period. The statute excludes time when "a parent is actually hospitalized or institutionalized," but that statutory toll is stated directly after a subdivision discussing hospitalization or institutionalization due to drug or alcohol use (Social Services Law § 384-b [7] [d] [ii]). Hence, the toll applies to time periods when a parent is in an institution or hospital for drug or alcohol treatment, not when a parent is in a penal institution (see e.g. Matter of Gregory B., 74 NY2d 77, 82, 89 [1989]; Matter of Kaiden AA. [John BB.], 81 AD3d 1209, 1209-

1211 [2011]; Matter of Lawrence KK. [Lawrence LL.], 72 AD3d 1233, 1233-1235 [2010], lv denied 14 NY3d 713 [2010]). Thus, the petitions complied with the statutory time requirement.

Respondent did not preserve her argument that Family Court improperly relied on inadmissible hearsay evidence. "Only competent, material and relevant evidence may be admitted in a fact-finding hearing"; hearsay is not competent, so it is not admissible (Family Ct Act § 624; see Family Ct Act § 1046 [b] [iii]; Matter of Aiden XX. [Jesse XX.], 104 AD3d 1094, 1096 n 5 [2013]). Because the caseworker assigned to respondent and her children during the relevant time period had left the employ of petitioner's contractor, petitioner's only witness at the fact-finding hearing was the caseworker's supervisor. Respondent objected to the supervisor's testimony twice on the ground of hearsay. Family Court overruled the first objection, noting that a hearsay objection may be appropriate at a later time, but not as to that particular question. The court sustained the second objection. Inasmuch as respondent did not make further hearsay objections, she did not preserve her current argument that most of the supervisor's testimony was inadmissible hearsay (see Matter of Perry v Surplus, 112 AD3d 1077, 1080 [2013]; Matter of Kayden H. [Kareena H.], 104 AD3d 764, 765 [2013]; compare Kulak v Nationwide Mut. Ins. Co., 40 NY2d 140, 145-146 [1976]). Hence, we will not address that argument, and will rely on the supervisor's testimony as evidence when addressing respondent's argument that petitioner failed to meet its burden.

Petitioner made diligent efforts to strengthen the parent-child relationship, but respondent failed to adequately plan for the children's future and maintain contact with them. Where a parent is incarcerated, an agency's duty may be satisfied by "informing the parent of the children's well-being and progress, responding to the parent's inquiries, investigating relatives suggested by the parent as placement resources, and facilitating communication between the children and the parent" (Matter of Charles K. [Charles L.], 100 AD3d 1308, 1308 [2012]; accord Matter of Joannis P. [Joseph Q.], 110 AD3d 1188, 1190 [2013], lv denied 22 NY3d 857 [2013]; see Social Services Law § 384-b [7] [f]). Here, petitioner presented evidence that the caseworker sent regular letters to respondent concerning the children's

well-being and respondent's rights, as well as informing her that the caseworker could accept collect calls to discuss the situation. When respondent suggested the children's uncle as a possible placement resource, petitioner's caseworker attempted to contact the uncle but received no response. While respondent was in the local jail for several months before her conviction, she was provided with biweekly visitation with the children. After her transfer to a state correctional facility six hours away, Family Court did not require visitation due to the travel distance as well as recommendations from the children's therapists against visitation. During that time period, the caseworker encouraged respondent to write letters to the children and for them to write back to her or draw pictures for her. The caseworker also kept in contact with respondent's corrections counselor regarding her programming in prison. Hence, petitioner met its burden of showing that it engaged in diligent efforts to facilitate respondent's relationship with the children (see Matter of Joannis P. [Joseph Q.], 110 AD3d at 1190; Matter of Kaiden AA. [John BB.], 81 AD3d 1209, 1209-1210 [2011]).

Respondent was required, "despite [her] incarceration, to develop a realistic plan for the children's future" (Matter of Johanna M. [John L.], 103 AD3d 949, 950 [2013], lv denied 21 NY3d 855 [2013]). Her plan was for the children to remain in foster care throughout her incarceration and for a period of time thereafter as necessary for her to establish suitable living arrangements for the children. She had uncertain plans to move herself and her children in with a new boyfriend that she met a few months earlier while in prison, and who the children had never met, but also testified that she would need to get to know him better. These vague plans, which would leave the children in foster care for a period of years, were not viable to secure permanency for the children (see Matter of Johanna M. [John L.], 103 AD3d at 951; Matter of Hailey ZZ. [Ricky ZZ.], 85 AD3d 1265, 1266 [2011], affd 19 NY3d 422 [2012]; Matter of Kaiden AA. [John BB.], 81 AD3d at 1210-1211). Respondent also had not adequately addressed the problem that led to the children's removal, so as to plan for their return to her care. Despite being ordered to participate in sex offender treatment, she took months to enroll. Her testimony regarding the reasons for the delay were not consistent or compelling. Respondent's testimony regarding the

underlying crime also shows that she failed to fully accept responsibility and understand the errors in judgment that led to her sexual relationship with a 12-year-old boy. Although respondent did successfully complete parenting and anger management classes, she failed to fully address the underlying problems that led to the children's removal and had no plan other than leaving them in foster care indefinitely. Based on her failure to plan for their future, despite diligent efforts by petitioner, Family Court correctly found that respondent permanently neglected her children, and properly terminated her parental rights to free the children for adoption (see Matter of Hailey ZZ. [Ricky ZZ.], 85 AD3d at 1266-1267).

Family Court did not err in issuing orders of protection prohibiting respondent from contacting the children until they reach the age of majority. Although an order of protection issued against a parent in a Family Ct Act article 10 proceeding can only remain in effect as long as an accompanying dispositional order (see Family Ct Act § 1056 [1]; Matter of Sheena D., 8 NY3d 136, 139-140 [2007]; compare Family Ct Act § 1056 [4] [permitting orders of protection to extend throughout a child's minority when applied to a nonparent]), an order of protection issued in a termination of parental rights matter can be in effect "for a specific time," which can include until the child turns 18 (Family Ct Act § 656; see Matter of Kristian J.P. v Jeannette I.C., 87 AD3d 1337, 1338 [2011]; Matter of Krista I. v Gregory I., 8 AD3d 696, 698 [2004]). Once respondent's parental rights were terminated, she had no right to contact the children and the court had no authority to direct contact between her and the children (see Matter of Hailey ZZ [Ricky ZZ.], 19 NY3d 422, 438 [2012]). Respondent's son expressed a desire not to see her and became upset at hearing her letters, despite being in weekly therapy. Her daughter, who was only two years old when placed in foster care, had severe developmental delays and has bonded to the foster parents. Based on this record evidence, the court properly issued orders of protection prohibiting respondent from contacting the children.

Garry, Lynch, Devine and Clark, JJ., concur.

ORDERED that the orders are affirmed, without costs.


ENTER:

Robert D. Mayberger
Clerk of the Court