Matter of Kaylee JJ. (Jennifer KK.) (2018 NY Slip Op 01366)





Matter of Kaylee JJ. (Jennifer KK.)


2018 NY Slip Op 01366


Decided on March 1, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 1, 2018

524265

[*1]In the Matter of KAYLEE JJ. and Another, Alleged to be Permanently Neglected Children. 
DELAWARE COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; JENNIFER KK., Appellant.

Calendar Date: January 16, 2018

Before: McCarthy, J.P., Lynch, Devine, Clark and Rumsey, JJ.


Cliff Gordon, Monticello, for appellant.
Amy B. Merklen, Delaware County Department of Social Services, Delhi, for respondent.
Lisa A. Natoli, Norwich, attorney for the children.


Lynch, J.

MEMORANDUM AND ORDER
Appeals (1) from an order of the Family Court of Delaware County (Burns, J.), entered February 2, 2016, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject children to be permanently neglected, and (2) from an order of said court (Rosa, J.), entered April 12, 2016, which terminated respondent's parental rights.
Respondent is the mother of two children (born in 2007 and 2009). In 2013, respondent consented to a finding of neglect and removal and placement of the children with the paternal grandfather after she was arrested and incarcerated for threatening to kill the children and to blow up their school via several posts to a social media account. As a result of this conduct, an order of protection on behalf of the children was issued, and the mother was prohibited from any contact with the children.
In April 2014, while respondent remained incarcerated, the children were removed from the paternal grandfather's home and placed in foster care. Petitioner commenced this proceeding [*2]against the mother for permanent neglect. In February 2016, after a fact-finding hearing, Family Court (Burns, J.) determined that respondent permanently neglected both children. Following a dispositional hearing, Family Court (Rosa, J.) terminated respondent's parental rights. Respondent now appeals.[FN1]
A permanently neglected child is one "who is in the care of an authorized agency and whose parent has failed, for a period of more than one year following the date such child came into the care of an authorized agency, substantially and continuously or repeatedly to maintain contact with or plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship" (Matter of Landon U. [Amanda U.], 132 AD3d 1081, 1084 [2015]; see Social Services Law § 384-b [7] [a]). "[T]o terminate parental rights on the ground of permanent neglect, a petitioner must first establish, by clear and convincing evidence, that it has made diligent efforts to encourage and strengthen the parent's relationship with the children" (Matter of Walter DD. [Walter TT.], 152 AD3d 896, 897 [2017], lv denied 30 NY3d 905 [2017]). A diligent effort is one that is "practical and reasonable" and designed "to ameliorate the problems preventing reunification and strengthen the family relationship" (Matter of Jessica U. [Stephanie U.], 152 AD3d 1001, 1002-1003 [2017] [internal quotation marks and citation omitted]). If this threshold burden is met, the issue becomes "whether respondent substantially planned for the child[ren's] future" (Matter of Marcus BB. [Donna AA.], 130 AD3d 1211, 1212 [2015]).
We find that Family Court (Burns, J.) properly determined that petitioner made diligent efforts to strengthen the relationship between respondent and the children. It was not disputed that, because she threatened to kill her children and, in association with these threats, posted photographs of murdered children on social media, respondent was convicted of falsely reporting an incident in the first degree and sentenced in 2013 to six months in prison and five years of probation. After respondent was released to probation, she violated her probation by possessing a cell phone and texting other people — including a sex offender — who were serving probation. Consequently, respondent was incarcerated from June 2014 through September 2015. Where a parent is incarcerated, petitioner's obligation to make diligent efforts "may be satisfied by informing the parent of the children's well-being and progress, responding to the parent's inquiries, investigating relatives suggested by the parent as placement resources, and facilitating communication between the children and the parent [as appropriate]" (Matter of Britiny U. [Tara S.], 124 AD3d 964, 966 [2015] [internal quotation marks and citation omitted]; see Matter of Arianna I. [Roger I.], 100 AD3d 1281, 1285 [2012]).
Petitioner's caseworker testified that while respondent was incarcerated, she wrote "absent parent letters" to apprise respondent of the children's progress, to request that respondent "engage in any services available at the jail" and to remind respondent that she had to work with petitioner to plan for the children's future. Due to the order of protection in place, respondent could not facilitate any communication or visits with the children. In response, respondent advised that the maternal grandmother could be a suitable resource for the children. Petitioner did investigate this suggestion, but determined that it was not viable and the maternal [*3]grandmother would not be able to care for the children. Under these circumstances, we agree with Family Court's determination that the evidence established, by clear and convincing evidence, that petitioner engaged in diligent efforts to encourage and strengthen respondent's relationship with the children (see Matter of Walter DD. [Walter TT.], 152 AD3d at 897-898; Matter of Jazmyne II. [Frank MM.], 144 AD3d 1459, 1460 [2016], lv denied 29 NY3d 901 [2017]; Matter of Marquise JJ. [Jamie KK.], 91 AD3d 1137, 1138 [2012], lv denied 19 NY3d 801 [2012]; Matter of Joseluise Juan M., 302 AD2d 219, 219-220 [2003], lv denied 100 NY2d 508 [2003]).
Next, we find that Family Court properly determined that respondent failed to substantially plan for the children's future. To assess whether a parent has fulfilled this obligation, "the court may consider the failure of the parent to utilize medical, psychiatric, psychological and other social and rehabilitative services and material resources made available to such parent" (Social Services Law § 384-b [7] [c]). "[A] parent must, at a minimum, take meaningful steps to correct the conditions that led to the child[ren's] initial removal from the home" (Matter of Alexander Z. [Jimmy Z.], 149 AD3d 1177, 1179 [2017] [internal quotation marks and citation omitted]).
Respondent testified that she began taking medication, sought mental health services and completed parenting, anger management and general business courses while she was incarcerated. It is not enough, however, to simply participate in available programs; rather, a parent must demonstrate that he or she "benefit[ted] from the services, programs and support offered and utilize[d] the tools or lessons learned in those classes in order to successfully plan for the children's future" (Matter of Jessica U. [Stephanie U.], 152 AD3d at 1004 [internal quotation marks, brackets and citations omitted]). When asked to detail the type of services that she received and the content of the courses, respondent was unable to recall anything substantive and, at times, she simply ignored questions and instead remained silent for prolonged periods. Respondent never sought to amend the order of protection to allow her to have some contact with the children and, even after being advised that petitioner did not approve the maternal grandmother's residence for the children, respondent made no attempt to offer an alternative plan. In our view, there was ample evidence to support Family Court's determination that respondent permanently neglected the subject children (see generally Matter of Walter DD. [Walter TT.], 152 AD3d at 898; Matter of Zoey O. [Veronica O.], 147 AD3d 1227, 1229-1230 [2017]).
We reject respondent's argument that Family Court (Rosa, J.) should have issued a suspended judgment instead of terminating her parental rights. Such disposition "may be issued if it is in the best interests of the child[ren] to allow the parent additional time to improve parenting skills and demonstrate his or her fitness to care for the child[ren]" (Matter of Madalynn I. [Katelynn J.], 111 AD3d 1205, 1206 [2013] [internal quotation marks and citations omitted]). During a dispositional hearing, the issue is the children's best interests and, in general, reunification with a parent is not presumed to be in their best interests (see id.; Matter of Jeremiah BB., 11 AD3d 763, 766 [2004]).
The evidence established that respondent had returned to prison in January 2016 for a parole violation and was released during the pendency of the dispositional hearing. The order of protection remained in effect, yet respondent was residing with the maternal grandmother who had petitioned for custody of the children. The mother had not pursued any job opportunities, nor did she attempt to find an alternative residence. The children — who had been placed in separate foster homes due to a behavioral issue — had significant needs that were being met by their respective foster families. Specifically, petitioner's caseworker testified that the children were enrolled in supportive services and demonstrating physical, emotional and social progress. [*4]Given respondent's history, her expectation that she would one day be able to reunite with the children if the maternal grandmother obtained custody was unrealistic and did not evince a sincere understanding of why her children were removed or a desire to improve her ability to parent the children. We thus find that Family Court's determination to terminate respondent's parental rights rather than granting her a suspended judgment was not an abuse of discretion (see Matter of Alexander Z. [Jimmy Z.], 149 AD3d 1177, 1180 [2017]; Matter of Madalynn I. [Katelynn J.], 111 AD3d 1205, 1206 [2013]), and the determination has a sound and substantial basis in the record (see Matter of Jazmyne II. [Frank MM.]), 144 AD3d at 1461; Matter of Michael JJ. [Gerald JJ.], 101 AD3d 1288, 1292 [2012], lv denied 20 NY3d 860 [2013]; Matter of Maelee N., 48 AD3d 929, 931 [2008], lv denied 10 NY3d 709 [2008]).
McCarthy, J.P., Devine, Clark and Rumsey, JJ., concur.
ORDERED that the appeal from the order entered February 2, 2016 is dismissed, without costs.
ORDERED that the order entered April 12, 2016 is affirmed, without costs.



Footnotes

Footnote 1: Because the February 2016 fact-finding order is nondispositional, respondent's appeal therefrom must be dismissed; that said, we review issues raised from fact-finding as part of our review of the dispositional order (see Matter of Jah'Meir G. [Eshale G.], 112 AD3d 1014, 1015 [2013], lv denied 22 NY3d 863 [2014]).