Matter of Jarrett P. (Jeremy P.) (2019 NY Slip Op 04609)





Matter of Jarrett P. (Jeremy P.)


2019 NY Slip Op 04609


Decided on June 7, 2019


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 7, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., PERADOTTO, CARNI, NEMOYER, AND WINSLOW, JJ.


1299 CAF 17-00463

[*1]IN THE MATTER OF JARRETT P. ONTARIO COUNTY DEPARTMENT OF SOCIAL SERVICES, PETITIONER-RESPONDENT; JEREMY P., RESPONDENT-APPELLANT.






DAVISON LAW OFFICE PLLC, CANANDAIGUA (MARY P. DAVISON OF COUNSEL), FOR RESPONDENT-APPELLANT.
HOLLY A. ADAMS, COUNTY ATTORNEY, CANANDAIGUA (HOLLY A. ADAMS OF COUNSEL), FOR PETITIONER-RESPONDENT. 
PAUL BLEAKLEY, GENEVA, ATTORNEY FOR THE CHILD. 


 Appeal from an order of the Family Court, Ontario County (William F. Kocher, J.), entered February 15, 2017 in a proceeding pursuant to Social Services Law § 384-b. The order, among other things, terminated respondent's parental rights and freed the subject child for adoption. 
It is hereby ORDERED that the order so appealed from is unanimously modified on the law by dismissing the petition insofar as it alleges that respondent abandoned the subject child and vacating the disposition and as modified the order is affirmed without costs, and the matter is remitted to Family Court, Ontario County, for further proceedings in accordance with the following memorandum: In this proceeding pursuant to Social Services Law § 384-b, respondent father appeals from an order that, inter alia, terminated his parental rights with respect to the subject child and freed the child for adoption. Preliminarily, contrary to the father's assertion, the record establishes that Family Court terminated his parental rights on both grounds asserted in the petition, i.e., abandonment and permanent neglect, and that the court met its obligation of setting forth the "facts it deem[ed] essential" to those determinations (CPLR 4213 [b]).
We agree with the father that petitioner failed to establish by clear and convincing evidence that he abandoned the child (see generally Social Services Law § 384-b [3] [g] [i]; [4] [b]). "An order terminating parental rights may be entered upon the ground that a child's parent abandoned such child for the period of six months immediately prior to the date on which the petition is filed in the court' " (Matter of Mason H. [Joseph H.], 31 NY3d 1109, 1110 [2018], quoting § 384-b [4] [b]). A child is deemed abandoned "if the parent evinces an intent to forego his or her parental rights and obligations as manifested by his or her failure to visit the child and communicate with the child or agency, although able to do so and not prevented or discouraged from doing so by the agency' " (id., quoting § 384-b [5] [a]). "Parents are presumed able to visit and communicate with their children and, although incarcerated parents may be unable to visit, they are still presumed able to communicate with their children absent proof to the contrary" (id.; see § 384-b [2] [b]; [5] [a]; Matter of Annette B., 4 NY3d 509, 514 [2005], rearg denied 5 NY3d 783 [2005]).
Here, the record establishes that the father—following up on a prior attempt to establish paternity that he had initially failed to adequately pursue—definitively established his paternity, while incarcerated, less than two months into the six-month period preceding the filing of the petition (cf. Matter of Jake W.E. [Jonathan S.], 132 AD3d 990, 991 [2d Dept 2015], lv denied 27 NY3d 906 [2016]; see generally Matter of Darrell J.D.J. [Kenneth R.], 156 AD3d 788, 789 [2d Dept 2017]). Thereafter, throughout the relevant period, the father initiated communications with the child's caseworker; sent the caseworker at least four letters inquiring about the child and included a card and drawing for the child in at least one of those letters; and participated in a [*2]service plan review. We conclude that the father's contacts "were not minimal, sporadic, or insubstantial" (Matter of John F. [John F., Jr.], 149 AD3d 1581, 1582 [4th Dept 2017]; cf. Matter of Anthony C.S. [Joshua S.], 126 AD3d 1396, 1397 [4th Dept 2015], lv denied 25 NY3d 911 [2015]; Matter of Rakim D.D.S., 50 AD3d 1521, 1522 [4th Dept 2008], lv denied 10 NY3d 717 [2008]; Matter of Elizabeth S., 275 AD2d 952, 953 [4th Dept 2000], lv denied 95 NY2d 769 [2000]). We therefore modify the order by dismissing the petition insofar as it alleges that the father abandoned the subject child.
We further conclude, however, that petitioner established by clear and convincing evidence that the father permanently neglected the child (see generally Social Services Law § 384-b [3] [g] [i]; [4] [d]; [7] [a]).
First, we reject the father's contention that petitioner failed to establish that it made diligent efforts to encourage and strengthen the parental relationship. The record establishes that, although the father was present at the hospital and believed he was the biological father when the child was born, he delayed several months before filing the initial paternity petition; thereafter refused to pay for the requisite DNA testing; missed the subsequent court appearance for the results, leading to dismissal of that petition; and did not file a second paternity petition until he was later incarcerated. The delays in establishing paternity were thus attributable to the father and, although the caseworker did not speak to the father about filing a paternity petition, she never discouraged him from doing so, and the record establishes that petitioner encouraged the establishment of his paternity by paying for the requisite DNA testing (see generally Matter of Noah V.P. [Gino P.], 96 AD3d 1472, 1472 [4th Dept 2012]). Further, where, as here, a parent is incarcerated during the relevant time period, "an agency's duty [to make diligent efforts to encourage and strengthen the parental relationship] may be satisfied by informing the parent of the child['s] well-being and progress, responding to the parent's inquiries, investigating relatives suggested by the parent as placement resources, and facilitating communication between the child[ ] and the parent' " (Matter of Britiny U. [Tara S.], 124 AD3d 964, 966 [3d Dept 2015]; see Social Services Law § 384-b [7] [f]). Here, after the father was adjudicated the biological parent of the child while incarcerated, petitioner exercised diligent efforts by exchanging monthly letters and photographs with the father; facilitating the father's communications by providing him with stamped envelopes; providing him updates on the child's progress and medical condition; and engaging in two service plan reviews with him (see Britiny U., 124 AD3d at 966; Matter of Kaiden AA. [John BB.], 81 AD3d 1209, 1209-1210 [3d Dept 2011]). The father faults petitioner for not offering him services such as parenting, counseling, and substance abuse classes; however, inasmuch as the father was incarcerated, petitioner "was not required to provide services and other assistance . . . so that problems preventing the discharge of the child[ ] from care [could] be resolved or ameliorated' " (Matter of Jaylysia S.-W., 28 AD3d 1228, 1229 [4th Dept 2006], quoting § 384-b [7] [f] [3]). Contrary to the father's further contention, the record establishes that he did not suggest relative placement resources to the caseworker during his incarceration and that the one relative who contacted the caseworker to inquire about the father's case did not indicate that she could be a viable placement resource for the child (see generally Britiny U., 124 AD3d at 966).
Next, contrary to the father's contention, we conclude that
" there is no evidence that [the father] had a realistic plan to provide an adequate and stable home for the child[ ]' " (Matter of Christian C.-B. [Christopher V.B.], 148 AD3d 1775, 1777 [4th Dept 2017], lv denied 29 NY3d 917 [2017]; see generally Social Services Law § 384-b [7] [a], [c]). Although the father testified that he planned to move in with his own father after his release from incarceration and to work in construction, the caseworker testified that the father had never mentioned his own father prior to the hearing on the petition. Moreover, the father did not identify a placement resource for the child during the pendency of his incarceration, nor did he have an alternative proposal if he was not released from prison as planned. "The failure of an incarcerated parent to provide any realistic and feasible alternative to having the child[ ] remain in foster care until the parent's release from prison . . . supports a finding of permanent neglect" (Matter of Alex C., Jr. [Alex C., Sr.], 114 AD3d 1149, 1150 [4th Dept 2014], lv denied 23 NY3d 901 [2014] [internal quotation marks omitted]; see Britiny U., 124 AD3d at 966; Matter of Joannis P. [Joseph Q.], 110 AD3d 1188, 1191 [3d Dept 2013], lv denied 22 NY3d 857 [2013]).
Finally, "where, as here, Family Court determined that there had been an abandonment as well as permanent neglect, a dispositional hearing is not mandated" (Matter of Joseph H., 185 [*3]AD2d 682, 684 [4th Dept 1992]; see Matter of Westchester County Dept. of Social Servs. [Terry W.], 207 AD2d 496, 497 [2d Dept 1994]; Matter of Dlaine S., 72 AD2d 775, 776 [2d Dept 1979]). However, inasmuch as the permanent neglect finding is the only ground in the petition that petitioner established by clear and convincing evidence, "[t]he court was required to hold such a dispositional hearing upon its finding of permanent neglect unless the parties consented to dispense with the hearing" (Matter of James V., 302 AD2d 916, 918 [4th Dept 2003]; see Family Ct Act § 625 [a]; Matter of Kyle K., 49 AD3d 1333, 1335 [4th Dept 2008], lv denied 10 NY3d 715 [2008]; Terry W., 207 AD2d at 497). The father asserts that he did not consent to dispense with a dispositional hearing, petitioner and the Attorney for the Child do not suggest otherwise, and the record is silent on the issue (see James V., 302 AD2d at 918). We therefore further modify the order by vacating the disposition, and we remit the matter to Family Court to conduct a dispositional hearing or to elicit, on the record, a specific waiver from the parties.
Entered: June 7, 2019
Mark W. Bennett
Clerk of the Court