Matter of Noah P. (Ashley P.) (2026 NY Slip Op 00687)

Matter of Noah P. (Ashley P.)

2026 NY Slip Op 00687

Decided on February 11, 2026

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 11, 2026
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CURRAN, J.P., BANNISTER, SMITH, OGDEN, AND DELCONTE, JJ.

80.1 CAF 24-01501

[*1]IN THE MATTER OF NOAH P. ONONDAGA COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, PETITIONER-RESPONDENT; ASHLEY P., RESPONDENT, AND ANTHONY F., RESPONDENT-APPELLANT. 

FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (THOMAS R. BABILON OF COUNSEL), FOR RESPONDENT-APPELLANT. 
ROBERT A. DURR, COUNTY ATTORNEY, SYRACUSE (LISA S. CUOMO OF COUNSEL), FOR PETITIONER-RESPONDENT.
CHRISTINA CAGNINA, SYRACUSE, ATTORNEY FOR THE CHILD. 

 Appeal from an order of the Family Court, Onondaga County (Julie A. Cerio, J.), entered September 9, 2024, in a proceeding pursuant to Social Services Law § 384-b. The order, among other things, terminated the parental rights of respondents. 
It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.
Memorandum: In this proceeding pursuant to Social Services Law § 384-b, respondent father appeals from an order that, inter alia, terminated his parental rights with respect to the subject child on the ground of permanent neglect and freed the child for adoption. We affirm.
Contrary to the father's contention, petitioner established that it exercised diligent efforts to encourage and strengthen the parent-child relationship, as required by Social Services Law § 384-b (7) (a). "Diligent efforts include reasonable attempts at providing counseling, scheduling regular visitation with the child, providing services to the parent[ ] to overcome problems that prevent the discharge of the child into their care, and informing the parent[ ] of [the] child's progress" (Matter of Jemma M. [Ashley M.], 237 AD3d 1569, 1569-1570 [4th Dept 2025], lv denied 44 NY3d 908 [2025] [internal quotation marks omitted]; see § 384-b [7] [f]; Matter of Star Leslie W., 63 NY2d 136, 142 [1984]; Matter of Zander W. [Lisa M.], 222 AD3d 1395, 1396 [4th Dept 2023], lv denied 41 NY3d 909 [2024]). Here, petitioner established by clear and convincing evidence (see § 384-b [3] [g] [i]) that it exercised diligent efforts to encourage and strengthen the father's relationship with the child (see Jemma M., 237 AD3d at 1570; Matter of Janette G. [Julie G.], 181 AD3d 1308, 1308-1309 [4th Dept 2020], lv denied 35 NY3d 907 [2020]). Petitioner provided the father with referrals to appropriate services, supervised the father's visitation with the child, communicated with the father frequently regarding his progress toward reunification, emphasized the importance of living apart from respondent mother, advised the father that—in addition to completing the recommended services—he must also implement the skills he learned through such services, and regularly updated the father on the child's well-being. Petitioner was not required, under the circumstances of this case, to establish that it also investigated alternative placements with relatives (cf. Matter of Caidence M. [Francis W.M.], 162 AD3d 1539, 1539-1540 [4th Dept 2018], lv denied 32 NY3d 905 [2018]).
Contrary to the further contention of the father, we conclude that, despite petitioner's diligent efforts, the father failed to plan for the child's future (see Social Services Law § 384-b [7] [a]). To " 'plan for the future of the child' " means to "take such steps as may be necessary to provide an adequate, stable home and parental care for the child" (§ 384-b [7] [c]). Notably, the [*2]plan must be "realistic and feasible" (id.) and, "[a]t a minimum, parents must take steps to correct the conditions that led to the removal of the child from their home" (Matter of Nathaniel T., 67 NY2d 838, 840 [1986] [internal quotation marks omitted]). Here, the evidence established that the father failed to make progress in a clinical visitation program, failed to make progress in the recommended domestic violence program, failed to engage in mental health treatment, failed to accept responsibility for his actions that led to the child's removal, failed to progress to unsupervised visitation with the child, and failed to develop a realistic plan to provide an adequate and stable home for the child (see Matter of Natalee F. [Eric F.], 194 AD3d 1397, 1398 [4th Dept 2021], lv denied 37 NY3d 911 [2021]). Although the father attended some of the services that he was referred to, he failed to "benefit from the services offered and utilize the tools or lessons learned in those classes in order to successfully plan for the [child's] future" (Matter of Albina H. [John H.], 229 AD3d 1169, 1170 [4th Dept 2024], lv denied 42 NY3d 903 [2024] [internal quotation marks omitted]; see Matter of Tori-Lynn L. [Troy L.], 227 AD3d 1455, 1458 [4th Dept 2024]).
The father also contends that Family Court erred in relying on portions of certain exhibits containing the progress and visitation notes from petitioner and the agency that supervised visitation with the child because such portions did not meet the foundational requirements of the business records exception to the hearsay rule (see CPLR 4518 [a]). The father's only objection to the exhibits in question, however, concerned the admissibility of certain hearsay statements contained within the exhibits—regardless of whether the exhibits themselves qualified as business records—and that objection was sustained. We thus conclude that he did not preserve his current contention for our review (see Matter of Britiny U. [Tara S.], 124 AD3d 964, 965 [3d Dept 2015]; Matter of Cory S. [Terry W.], 70 AD3d 1321, 1322 [4th Dept 2010]). In any event, even assuming, arguendo, that the court erred in relying upon the alleged inadmissible evidence, we conclude that the error is harmless inasmuch as "the record otherwise contains ample evidence supporting [the] [c]ourt's determination" (Matter of Brooklyn S. [Stafania Q.—Devin S.], 150 AD3d 1698, 1700 [4th Dept 2017], lv denied 29 NY3d 919 [2017] [internal quotation marks omitted]; see Matter of Carmela H. [Danielle F.], 185 AD3d 1460, 1461 [4th Dept 2020], lv denied 35 NY3d 915 [2020]).
Finally, we reject the father's contention that the court abused its discretion in refusing to enter a suspended judgment (see Matter of Tumario B. [Valerie L.], 83 AD3d 1412, 1412 [4th Dept 2011], lv denied 17 NY3d 705 [2011]; Matter of Elijah D. [Allison D.], 74 AD3d 1846, 1847 [4th Dept 2010]). A suspended judgment "is a brief grace period designed to prepare the parent to be reunited with the child" (Matter of Michael B., 80 NY2d 299, 311 [1992]; see Family Ct Act § 633), and may be warranted where the parent has made sufficient progress in addressing the issues that led to the child's removal from custody (see generally Matter of James P. [Tiffany H.], 148 AD3d 1526, 1527 [4th Dept 2017], lv denied 29 NY3d 908 [2017]; Matter of Sapphire A.J. [Angelica J.], 122 AD3d 1296, 1297 [4th Dept 2014], lv denied 24 NY3d 916 [2015]). Here, the evidence at the dispositional hearing established that the father had made no progress in addressing the issues that led to the removal of the child and that he still had only supervised visits with the child. We therefore conclude that the court properly determined that a suspended judgment was unwarranted, and that the best interests of the child would be served by freeing the child for adoption, thereby "provid[ing] him with prospects for permanency and some sense of the stability he deserve[s]" (Matter of Raine QQ., 51 AD3d 1106, 1107 [3d Dept 2008], lv denied 10 NY3d 717 [2008]; see Matter of Brandon I.J. [Daisy D.], 198 AD3d 1310, 1311 [4th Dept 2021], lv denied 38 NY3d 901 [2022]; Elijah D., 74 AD3d at 1847).
Entered: February 11, 2026
Ann Dillon Flynn
Clerk of the Court