In the Matter of RANDI NN., a Neglected Child. SCHENECTADY COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; JOSEPH MM., Respondent; KIMBERLY MM., Appellant. (Proceeding No. 1.) In the Matter of RANDI NN., a Neglected Child. SCHENECTADY COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; RANDI MM., Respondent; KIMBERLY MM., Appellant. (Proceeding No. 2.) [891 NYS2d 521]—

Mercure, J.

Respondent Joseph MM. (hereinafter the father) and respondent Randi MM. (hereinafter the mother) are the parents of a daughter (born in 2005). In August 2005, Family Court temporarily removed the child from her parents, found that no suitable relative existed with whom she could appropriately reside and placed her with petitioner. These neglect proceedings were commenced against the parents a short time later, and

both admitted to neglecting the child. The child remains in a foster placement and, although petitioner is seeking to terminate the parental rights of the mother and father, the permanency goal remains to return the child to her parents.

Kimberly MM. (hereinafter the grandmother) is the child's paternal grandmother and has custody of two of the child's siblings. She sought visitation with the child in January 2006 and, in August 2006, filed a custody petition. The grandmother then moved to terminate the child's foster placement in favor of a placement with her. Following a hearing, Family Court denied the motion to terminate the placement. The grandmother now appeals, and we reverse.

The grandmother's motion was founded upon Family Ct Act § 1061, which permits Family Court to modify or vacate any order made in a child protective proceeding upon a showing of good cause (see Matter of Amber VV., 19 AD3d 767, 769 [2005]). She argues that good cause can be found in the failure of petitioner to comply with Family Ct Act § 1017, which sets out the steps to be followed in determining the appropriate placement of a child when initially removed from his or her home. When the decision to remove the child was made, petitioner was obliged to locate the child's relatives, including her grandmother, "and inform them of the pendency of the proceeding and of the opportunity for becoming foster parents or for seeking custody or care of the child, and that the child may be adopted by foster parents if attempts at reunification with the birth parent are not required or are unsuccessful" (Family Ct Act former § 1017 [1]; see L 2003, ch 657, § 4).[1] Family Court was then required to determine if the child could suitably reside with any such relative (see Family Ct Act former § 1017 [1] [a], [b]; see also L 1989, ch 744, § 1). If a suitable relative existed, Family Court would either place the child with that relative or with the local commissioner of social services with directions to allow the child to reside with that relative pending his or her approval as a foster parent (see Family Ct Act former § 1017 [2] [a]). Only if no suitable relative could be located would Family Court go on to consider whether another placement would be appropriate (see Family Ct Act former § 1017 [2] [b]).

The statute, in short, is intended to guard not only the rights

---

1. Since the events at issue here, Family Ct Act § 1017 has been significantly amended to, among other things, further define which relatives must be notified, require the local commissioner of social services to document the results of his or her investigation, and broaden the range of placement options available to Family Court (see Sobie, Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 1017, 2008 Pocket Part, at 200-201).

of relatives of a child who is removed from his or her home, but also "to protect the *rights and interests of children* to be placed with their relatives" (Besharov, Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 1017, at 457; *see Matter of Joseph P.*, 148 Misc 2d 25, 27 [1990]). Thus, a placement order must be set aside if a failure to comply with the statute prejudiced either the rights of a relative to seek placement (*see Matter of Elizabeth YY. v Albany County Dept. of Social Servs.*, 229 AD2d 618, 620-621 [1996]) or the child's right to be placed with a suitable relative (*see* Besharov, Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 1017, at 457).

Here, although petitioner was aware of the grandmother's existence, the only effort made to directly speak with her consisted of an August 2005 telephone call by a caseworker, Christina Cheetham, who left a message on the grandmother's answering machine with no content other than a request for her to call back. Approximately three weeks later, Cheetham was contacted by Kim Emile, a social worker who worked with the grandmother and who allegedly told Cheetham that the grandmother was not interested in taking custody of the child.[2] Prior to the grandmother seeking visitation, however, neither Cheetham nor her successor asked the grandmother if she was interested in acting as a foster parent or if she wanted visitation with the child. The burden is not on the grandparent in that regard, it is on petitioner (*see* Family Ct Act § 1017 [1]).

The grandmother denied telling anyone at petitioner that she was not interested in foster placement or custody; indeed, she testified that she told counsel for petitioner in November 2005 that she would seek custody if necessary, but that no action was ever taken by petitioner in furtherance of that conversation. Moreover, Cheetham's successor admitted that he never explained to the grandmother how to become a foster parent, and that counsel for petitioner advised him not to pursue her as a potential foster parent. The grandmother stated that, had petitioner made any effort to explain her options, it would have helped her to decide whether to seek custody. Although the grandmother did not finally decide to seek custody until after the child's removal, the grandmother was confused as to her options with regard to foster placement and petitioner failed in its

2. The grandmother testified that, while she asked Emile to contact petitioner and find out what was going on with the child, she did not authorize Emile to tell petitioner that she did not want custody. Emile herself did not testify, having repeatedly failed to appear despite having been subpoenaed, and Family Court made no effort to secure her attendance.

statutory duty to explain those options and make clear to the grandmother that her inaction could ultimately lead to foster parents obtaining custody of the child. As such confusion has potentially deprived the child of a placement with a suitable relative, we are satisfied that the grandmother demonstrated prejudice to both herself and the child arising from the failure of petitioner to comply with Family Ct Act § 1017 (1) and that good cause existed to vacate the placement order (cf. *Matter of Elizabeth YY. v Albany County Dept. of Social Servs.*, 229 AD2d at 620-621). We accordingly vacate the placement order and remit these proceedings to Family Court for a de novo determination as to whether the grandmother is a suitable relative and, if so, what the appropriate placement for the child would be.

Given that these proceedings are to be remitted, we also address the grandmother's claim that the child's Law Guardian must be removed due to a conflict of interest created by her prior role as a law guardian for the child's siblings, two of whom have been adopted by another individual and a third of whom is in the grandmother's custody.[3] The grandmother has not established that the Law Guardian has a conflict or that her ability to represent the child has been hampered in any way (*see Matter of Zirkind v Zirkind*, 218 AD2d 745, 746 [1995]). To the extent that the grandmother asserts that a conflict exists due to the siblings seeking visitation with the child that the Law Guardian may oppose, the appointment of separate law guardians for the siblings—appointments which the child's Law Guardian suggested—insures that the siblings will be properly represented (*see e.g. Corigliano v Corigliano*, 297 AD2d 328, 329 [2002]; *Gary D.B. v Elizabeth C.B.*, 281 AD2d 969, 971-972 [2001]). Indeed, the siblings' Law Guardians have stated that they perceive no conflict in the Law Guardian for the child continuing in her role. We thus perceive no abuse of discretion in Family Court's refusal to disqualify the Law Guardian.

The grandmother's remaining arguments have either been rendered academic in light of the foregoing or are unpreserved for our review.

Cardona, P.J., Spain, Lahtinen and Kane, JJ., concur. Ordered that the order is reversed, on the law, without costs, motion granted and matter remitted to the Family Court of Schenectady County for further proceedings not inconsistent with this Court's decision.

---

**3.** It is unnecessary to address the grandmother's claim that the judge who heretofore presided over these matters behaved inappropriately, as the judge has now recused herself.