■ In the Matter of CAROLYN S., Appellant, v TOMPKINS COUNTY DEPARTMENT OF SOCIAL SERVICES et al., Respondents, et al., Respondents. [915 NYS2d 719]—

Spain, J.P. Appeal from an order of the Family Court of Tompkins County (Sherman, J.), entered October 1, 2008, which dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for custody of and/or visitation with her grandchildren.

Petitioner is the maternal grandmother of the three children herein: two girls, born in 1999 and 2002, who share the same father, respondent Jason XX., and one boy, born in 2006, who has a different father, respondent Carlos WW. The parental rights of the girls' mother, respondent Jaime S. (hereinafter the mother), were terminated for permanent neglect in late 2007 and the boy's father surrendered his parental rights in 2008; those determinations are not in issue. In December 2007, respondent Tompkins County Department of Social Services (hereinafter DSS) filed a petition against the girls' father, who is serving a lengthy prison sentence, alleging that he permanently

neglected the girls. In February 2008, DSS filed a petition against the mother for permanent neglect of her son. The grandmother filed the subject petition for custody or visitation with all three grandchildren in January 2008.

Family Court consolidated all of the petitions and, after a fact-finding hearing, determined that the children had been permanently neglected by their respective parents. The court subsequently held a dispositional hearing at which it also considered the grandmother's custody/visitation petition. In its decision, the court (1) terminated the remaining parental rights, i.e., the mother's rights to her son—which we later affirmed— (*Matter of Carlos R.*, 63 AD3d 1243 [2009], *lv denied* 13 NY3d 704 [2009]) and Jason XX.'s rights to the girls, (2) dismissed the grandmother's petition, and (3) transferred custody of the children to DSS for purposes of adoption by their foster parents. The grandmother now appeals, supported by the mother's brief, arguing that Family Court erred in denying her custody or visitation.

Initially, we find no error in the procedure followed by Family Court. The record does not reflect that the grandmother objected to the consolidation of the petitions, as directed in a March 14, 2008 conference order. Further, upon completion of the fact-finding hearing, the grandmother received the full evidentiary hearing to which she was entitled on her Family Ct Act article 6 petition (*see* Family Ct Act § 625 [a]; *see also Matter of Seth Z.*, 45 AD3d 1208, 1211 [2007]; *cf. Matter of Carl G. v Oneida County Dept. of Social Servs.*, 24 AD3d 1274, 1275 [2005]). Indeed, consideration of such a petition *should* occur in the context of a dispositional hearing on an underlying permanent neglect petition (*see Matter of Karen A.O. v Child Protective Servs.*, 6 AD3d 1100, 1100-1101 [2004]; *Matter of Carl G. v Oneida County Dept. of Social Servs.*, 24 AD3d at 1275). The record also belies the claim that the grandmother's due process rights were thereby violated, or that the lower standard of proof at the dispositional phase (*see* Family Ct Act § 624) prejudiced the court's best interest analysis.

On the merits, the record fully supports Family Court's determination that it is not in the best interests of the children to award the grandmother custody or visitation. The court's finding that the children had been permanently neglected (and that the respective other parent's rights had been previously terminated or surrendered) established the extraordinary circumstances needed to confer standing on the grandmother to pursue custody of the children, which was not disputed (*see Matter of Arlene Y. v Warren County Dept. of Social Servs.*, 76

AD3d 720, 720-721 [2010], *lv denied* 15 NY3d 713 [2010]; *see generally Matter of Bennett v Jeffreys*, 40 NY2d 543, 549 [1976]). Thus, the court's sole inquiry on the grandmother's custody petition (*see* Domestic Relations Law § 72 [2] [a]), as with the disposition on the permanent neglect finding (*see* Family Ct Act §§ 623, 631), was the best interests of the children (*see Matter of Star Leslie W.*, 63 NY2d 136, 147 [1984]). "At this juncture, a nonparent relative [including a grandparent] takes no precedence for custody over the adoptive parents selected by an authorized agency" (*Matter of Violetta K. v Mary K.*, 306 AD2d 480, 481 [2003] [citations omitted]; *see Matter of Peter L.*, 59 NY2d 513, 520 [1983]; *see also* Family Ct Act § 631). "We accord great deference to Family Court's [best interests findings and] custody determination, [r]ecognizing the advantageous position of Family Court to evaluate the testimony and assess the credibility of witnesses[,] . . . provided that [they are] supported by a sound and substantial basis in the record" (*Matter of White v White*, 77 AD3d 1073, 1074-1075 [2010] [internal quotation marks and citations omitted]; *see Matter of Johnpeer v Williams*, 74 AD3d 1584, 1585 [2010]).

The grandmother, who is employed full time and has an eighth grade education, lived with her boyfriend and two daughters, ages 12 and 17 at the time of the 2008 hearing. She has helped care for the three grandchildren since birth, providing financial and babysitting help, and they lived with her for weeks at a time during the mother's ongoing struggle with cocaine addiction since 2002. She loves them, as do her other daughters who have lived with them. The girls were removed from the mother's home for neglect in March 2005 and placed in the grandmother's care, as was the son shortly after his January 2006 birth, until all three children were removed from the grandmother's care in August 2006. The removal occurred after the mother told a visiting caseworker, who so testified, that the children had been living with her for about one month, which violated Family Court's order placing custody with the grandmother and occurred at a time when the mother had recently failed to unsuccessfully complete a drug treatment program and was considered a high risk for relapse. The grandmother, supported by the mother and an adult daughter, testified that this was not true, that the children were living with the grandmother and were only at the mother's house for their daily four-hour unsupervised visitation. The mother testified that she lied to the caseworker, believing that it would persuade DSS that she was able to care for the children and lead to their return to her custody more quickly. Family Court credited the caseworkers' testimony, expressing "grave concerns that [the grandmother]

will repeat the same actions were she to be granted custody." We discern no grounds for disagreeing with the court's first-hand assessment of the veracity of this conflicting testimony.

After the removal of the children from the grandmother's care, she was permitted unsupervised visitation for a short time and then visits were supervised; they lived briefly with another relative and were then placed with their current foster parents. All visitation with the grandmother was ended after a confrontation between the grandmother and a supervising caseworker at a July 2007 visit, the details of which were disputed. The caseworker testified that after the grandmother made inappropriate statements in front of the children regarding their care and placement, she told her not to engage in adult conversation in their presence; the grandmother became agitated, raised her voice, openly mocked the caseworker and made further statements about taking the children away from their family. The caseworker reported that she felt threatened and the children became fearful. The grandmother minimized the incident and denied raising her voice, but admitted asking about the children's placement; she attributed the episode to being upset and frustrated about a prolonged period without visits and DSS's failure to return her calls.

Another encounter witnessed by the children occurred on Halloween 2007, resulting in police being summoned as the children were setting out to trick-or-treat with one of their paternal grandmothers and the foster parents. The grandmother yelled out from across the street, upset and angry that a paternal grandmother was getting visitation and expressing her views that she did not want the children adopted by the foster parents and that they should be with family. Another angry confrontation occurred at a December 2007 court appearance. The record before us supports Family Court's conclusion that the grandmother demonstrated "inappropriate and aggressive conduct toward DSS employees in the presence of the children both during a supervised visitation, and during a Halloween event with another biological grandparent."

The testimony further established with regard to the foster parents, one of whom has a graduate degree in developmental psychology, that they have provided a stable, loving home, and that all three children are happy, thriving in school and have bonded with them. Additionally, the children are making progress in therapeutic counseling addressed to their behavioral problems—such as violence with one another and their peers—and their emotional trauma from their upheavals and conflicted feelings.

Giving due deference to Family Court (*see Matter of White v White*, 77 AD3d at 1074-1075), there is a sound and substantial basis in the record for the determination to deny the grandmother's petition for custody and to retain custody in DSS with the view toward adoption of the children by their foster parents. Further, given the grandmother's conduct and open hostility to the foster parents and opposition to the adoption, we will not disturb the court's determination that visitation would not be in the best interests of the children (*see Matter of Couse v Couse*, 72 AD3d 1231, 1233 [2010]; *compare Matter of E.S. v P.D.*, 8 NY3d 150, 157 [2007]).

Finally, we disagree with the mother's contention that the children were ineffectively represented at the hearing by their attorney,* who she alleges failed to adequately express their wishes, and likewise reject the grandmother's related claim that Family Court abused its discretion in declining to hold a *Lincoln* hearing for the two girls. "The decision to interview the children in a custody dispute, although preferable, is not mandatory, but rather lies within the discretion of the trial court" (*Matter of Walker v Tallman*, 256 AD2d 1021, 1022 [1998], *lv denied* 93 NY2d 804 [1999] [citations omitted]; *see Matter of Lincoln v Lincoln*, 24 NY2d 270, 273-274 [1969]). In light of the testimony about the girls' emotional turmoil, delicate age and concerns about the possible harmful affects to them, we do not find that Family Court abused its discretion in concluding, after hearing arguments from all sides including opposition by the attorney for the children, that there was no real value in interviewing them (*see Matter of Gallogly v Gallogly*, 291 AD2d 893, 893-894 [2002]). In so ruling, the court noted that the children's love for and attachment to their grandmother were not disputed. With regard to the representation provided by their attorney at the hearing, the record reflects a long-standing relationship and involvement, as well as active representation on these petitions, and we will not second-guess her position. There is no evidence that the attorney for the children failed to abide her ethical obligation in representing them (*see* 22 NYCRR 7.2).

Rose, Lahtinen, Kavanagh and Garry, JJ., concur. Ordered that the order is affirmed, without costs.

---

* The children are represented by a new attorney on appeal, who does not join in the mother's argument.