Matter of Timothy GG. (Meriah GG.) (2018 NY Slip Op 04987)





Matter of Timothy GG. (Meriah GG.)


2018 NY Slip Op 04987


Decided on July 5, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 5, 2018

523685

[*1]In the Matter of TIMOTHY GG., Alleged to be a Permanently Neglected Child. WARREN COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; MERIAH GG., Appellant. (Proceeding No. 1.)
In the Matter of JODY C., Appellant, 
MERIAH GG., Respondent, et al., Respondent. (Proceeding No. 2.) (And Other Related Proceedings.)

Calendar Date: June 1, 2018

Before: McCarthy, J.P., Lynch, Devine, Clark and Rumsey, JJ.


Rural Law Center of New York, Castleton (Kelly L. Egan of counsel), for Meriah GG., appellant in proceeding No. 1 and respondent in proceeding No. 2.
Noreen McCarthy, Keene Valley, for Jody C., appellant.
James B. Lesperance Jr., Warren County Department of Social Services, Lake George, for Warren County Department of Social Services, respondent.
Rose T. Place, Glens Falls, attorney for the child.



MEMORANDUM AND ORDER
McCarthy, J.P.
Appeals from an amended order and order of the Family Court of Warren County (Wait, J.), entered February 23, 2016 and August 18, 2016, which, among other things, granted petitioner's application, in proceeding No. 1 pursuant to Social Services Law § 384-b, to adjudicate the subject child to be permanently neglected, and terminated respondent's parental rights.
Respondent Meriah GG. (hereinafter the mother) is the mother of the subject child (born in 2010). In October 2013, petitioner Warren County Department of Social Services (hereinafter DSS) removed the child from the mother's home and filed a neglect petition due to her drug use. In January 2014, the mother was incarcerated. In February 2014, petitioner Jody C. (hereinafter the grandmother), who was also then incarcerated, filed a petition for visitation and was granted permission to make phone calls and write letters to the child while he was in foster care. The mother later admitted to some of the allegations in DSS's neglect petition, and Family Court (Breen, J.) found the child to be neglected and continued his placement in foster care. During the summer of 2014, the mother was briefly released from jail, but thereafter violated probation and was sentenced to six years in prison.
In January 2015, the grandmother was released from prison and filed petitions for custody of the child and to terminate the child's placement in foster care. In February 2015, DSS opposed the grandmother's petitions and filed a petition to terminate the mother's parental rights based on permanent neglect [FN1]. The grandmother subsequently sought in-person visitation with the child. Although Family Court (Wait, J.) granted the grandmother's motion to require DSS to investigate her as a possible custodial resource (see Family Ct Act § 1017), the court postponed decision on her requests for additional visitation.
Following a fact-finding hearing on the permanent neglect petition, in February 2016 Family Court determined that the mother failed to plan for the child's future, resulting in [*2]permanent neglect. The court then held a dispositional hearing, at which it also addressed the grandmother's petitions. After the hearing concluded, but before the court issued a decision, the grandmother was incarcerated for violating her parole. In an August 2016 order, the court terminated the mother's parental rights, authorized DSS to consent to the child's adoption and dismissed the grandmother's petitions. The mother appeals from the February 2016 amended order, and both she and the grandmother appeal from the August 2016 order.
Initially, because the February 2016 fact-finding order is nondispositional, the mother's appeal from it must be dismissed (see Family Ct Act § 1112 [a]; Matter of Kaylee JJ. [Jennifer KK.], 159 AD3d 1077, 1077 n [2018]). "Nevertheless, issues from the fact-finding phase of the proceeding may be raised on our review of the dispositional order" (Matter of Jah'Meir G. [Eshale G.], 112 AD3d 1014, 1015 [2013] [citations omitted], lv denied 22 NY3d 863 [2014]; see CPLR 5501 [a] [1]).
Family Court erred in imposing concurrent and contradictory permanency goals of return the child to parent and free the child for adoption. As we have previously held, the statute permits imposition of only one permanency goal (see Matter of Julian P. [Melissa P.—Zachary L.], 106 AD3d 1383, 1384 [2013]; Matter of Dakota F. [Angela F.], 92 AD3d 1097, 1099 [2012]; see also Family Ct Act § 1089 [d] [2] [i]). Despite the language in the permanency orders, it appears that the court intended to impose a permanency goal of return to parent but with the intention that DSS engage in concurrent planning for the child in case he could not be returned to the mother (see Matter of Dakota F. [Angela F.], 92 AD3d at 1099 n 4). Because no one appealed from the permanency orders setting forth concurrent goals, and the court generally proceeded as if the goal was to return the child to the mother, we do not find that this error requires reversal (see Matter of Samuel DD. [Margaret DD.], 123 AD3d 1159, 1163 n 4 [2014], lv denied 24 NY3d 918 [2015]; compare Matter of Dakota F. [Angela F.], 92 AD3d at 1098).
The mother and the grandmother argue that DSS and Family Court violated Family Ct Act § 1017. That statute provides that, "when the court determines that a child must be removed from his or her home" based on abuse or neglect, or placed as part of a disposition upon adjudication per Family Ct Act § 1055, the court shall direct the local commissioner of social services to immediately locate and investigate any non-respondent parent, relatives of the child and other suitable persons identified by a parent or child as a placement resource, and inform them of the pendency of the proceeding and the opportunity to seek custody of the child (Family Ct Act § 1017 [1] [a]). After the investigation, the court must determine "whether there is a non-respondent parent, relative or suitable person with whom such child may appropriately reside" (Family Ct Act § 1017 [1] [c]). "[A] placement order must be set aside if a failure to comply with the statute prejudiced either the rights of a relative to seek placement or the child's right to be placed with a suitable relative" (Matter of Randi NN. [Joseph MM.ÄKimberly MM.], 68 AD3d 1458, 1460 [2009] [internal citation omitted]; see Matter of Elizabeth YY. v Albany County Dept. of Social Servs., 229 AD2d 618, 620-621 [1996]).
DSS delayed in investigating the grandmother as a relative resource, though some of the [*3]delay is attributable to the grandmother incorrectly answering questions on her original application. Although we do not condone DSS's delay, the record does not establish that anyone was prejudiced by it. When DSS did conduct its Family Ct Act § 1017 investigation, DSS concluded that the grandmother was not suitable as a placement for the child due to her prior substance abuse, criminal history, indicated child protective reports and currently being on parole. Family Court eventually agreed with that assessment. Because the grandmother was not someone with whom the child could appropriately reside, any delay in the investigation was not prejudicial.
DSS did not conduct an investigation into the mother's cousin. Notably, Family Ct Act § 1017 speaks in terms of conducting an investigation into relatives at the time that the court determines that the child must be removed from the parent (see Family Ct Act § 1017 [1]). The statute does not seem to create a duty for DSS to seek out possible relatives in perpetuity, potentially for years, while a child remains in foster care. When the child was removed, DSS considered as possible placement resources the grandmother (who was then incarcerated), the mother's aunt (who obtained visits but informed DSS that she was unable to take custody of the child) and at least one of the mother's friends (who also could not take custody). The mother did not identify her cousin as a possible resource, and DSS investigated everyone who she did identify. It was not until two years after the child's removal, and only a few days before the commencement of the permanent neglect hearing, that the cousin applied for approval as a relative resource. Family Court wondered where the cousin had been and why she had not sought to be involved earlier (see Matter of Elizabeth YY. v Albany County Dept. of Social Servs., 229 AD2d at 620-621). The cousin did not file any motion or petition for custody and, although she was present at the dispositional hearing, did not testify. Under the circumstances, neither DSS nor the court violated Family Ct Act § 1017.
Family Court did not abuse its discretion in precluding the mother from calling the grandmother to testify at the fact-finding hearing. In general, hearing courts have broad discretion concerning what evidence is admitted at a hearing (see Matter of Gardner v Gardner, 69 AD3d 1243, 1244 [2010]; Matter of Hover v Shear, 232 AD2d 749, 750 [1996], lv dismissed and denied 89 NY2d 964 [1997]; see also Feldsberg v Nitschke, 49 NY2d 636, 643-644 [1980]). Here, the proffer indicated that the grandmother's proposed testimony would address the mother's plan for the grandmother to obtain custody until the mother's release from prison [FN2]. DSS stated that the mother had established, and it was not controverted, that this was her plan, so the grandmother's testimony was unnecessary. The court noted that the permanency plan was return [*4]to parent, which included a requirement that DSS investigate whether any appropriate relatives are available as alternative placements, and DSS's records showed the grandmother's contacts and efforts to be involved with the child. Thus, the court concluded, in part, that the grandmother's testimony would not be necessary or helpful, and may not be relevant at that stage of the proceeding. Regardless of any other reasons the court may have raised, because the proposed testimony would have been cumulative, the court did not abuse its discretion in ruling that the grandmother should not testify at the fact-finding hearing (see Matter of Ebel v Urlich, 273 AD2d 530, 532 [2000]).
There is a sound and substantial basis in the record to support Family Court's determinations that the child was permanently neglected and to terminate the mother's parental rights. "A permanently neglected child is one who is in the care of an authorized agency and whose parent has failed, for a period of more than one year following the date such child came into the care of an authorized agency, substantially and continuously or repeatedly to maintain contact with or plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship" (Matter of Kaylee JJ. [Jennifer KK.], 159 AD3d at 1077-1078 [internal quotation marks and citation omitted]; see Social Services Law § 384-b [7] [a]). "Thus, to terminate parental rights on the ground of permanent neglect, a petitioner must first establish, by clear and convincing evidence, that it has made diligent efforts to encourage and strengthen the parent's relationship with the child[]" (Matter of Walter DD. [Walter TT.], 152 AD3d 896, 897 [2017], lv denied 30 NY3d 905 [2017]; see Social Services Law § 384-b [7] [a], [f]).
If DSS established that it made diligent efforts, it next had to demonstrate by clear and convincing evidence that the mother failed to plan for the future of the child for the requisite time period (see Social Services Law § 384-b [7] [a]; Matter of Hailey ZZ. [Ricky ZZ.], 19 NY3d 422, 429 [2012]; Matter of Duane FF. [Harley GG.], 154 AD3d 1086, 1088 [2017], lv denied 30 NY3d 908 [2018]). "The plan must be realistic and feasible, and good faith effort shall not, of itself, be determinative" (Social Services Law § 384-b [7] [c]; see Matter of Paige J. [Jeffrey K.], 155 AD3d 1470, 1474 [2017]). It is unrealistic and infeasible to plan to have a child remain in foster care long term until the parent is released from prison (see Matter of Hailey ZZ. [Ricky ZZ.], 19 NY3d at 430-431; Matter of Maykayla FF. [Eugene FF.], 141 AD3d 898, 900 [2016]; Matter of Johanna M. [John L.], 103 AD3d 949, 951 [2013], lv denied 21 NY3d 855 [2013]). Following the adjudication of a child as permanently neglected, a dispositional hearing must be held for the court to determine the child's best interests, and there is no presumption that returning the child to the parent is in the child's best interests (see Matter of Kaylee JJ. [Jennifer KK.], 159 AD3d at 1080; Matter of Alexander Z. [Jimmy Z.], 149 AD3d 1177, 1180 [2017]). "This Court accords great deference to [Family Court] . . . because of the court's opportunity to evaluate the demeanor and credibility of witnesses, and will disturb its factual findings only if they lack a sound and substantial basis in the record" (Matter of Victor WW. [Salma XX.], 96 AD3d 1281, 1282 [2012] [internal quotation marks and citations omitted]; see Matter of Kaylee JJ. [Jennifer KK.], 159 AD3d at 1080).
Regarding its diligent efforts to encourage and strengthen the mother's relationship with the child, DSS created a service plan, arranged visitation, advised the mother of the availability of a transportation aide and bus tokens, discussed with the mother possible placement resources, advised her to apply for Medicaid and temporary assistance, and referred her for drug treatment. The mother did not follow through on most of these recommendations. For instance, she attended only six of 14 arranged visits with the child before her incarceration. When the mother was incarcerated, DSS arranged phone calls and visits with the child at the jail and, later, in prison. DSS sent the mother letters keeping her informed of the child's progress, advising her of her obligations to continue parenting while incarcerated and encouraging her to obtain services to resolve some of the issues that led to the child's removal. Thus, DSS established that it made diligent efforts to encourage and strengthen the parent-child relationship (see Matter of Duane FF. [Harley GG.], 154 AD3d at 1087; Matter of Walter DD. [Walter TT.], 152 AD3d at 897-898).
As to whether the mother adequately planned for the child's future, she testified that she was using heroin before he was removed and that she continued to use drugs thereafter. She never completed a drug and alcohol evaluation. While on probation during the summer of 2014, the mother was not compliant with her drug court program and possessed an illegal substance, resulting in a probation violation and the imposition of a six-year prison sentence. Hence, the mother failed to address her drug addiction and abuse, which was the problem that led to the child's removal (see Matter of Johanna M. [John L.], 103 AD3d at 950).
The mother's plan was for the grandmother or the mother's cousin to obtain custody of the child until she was released from prison, which was not scheduled until at least 2019. As noted above, DSS had investigated the grandmother and determined that she was not a suitable placement, and the cousin did not apply for approval as a relative resource until days before the hearing commenced — more than two years after the child was removed — and she did not follow up on that application. The mother never informed DSS that she considered the cousin as a placement resource for the child. Thus, the mother did not have a realistic plan for the child's future because the relatives that she identified as being able to care for the child were either unfit or had failed to seek placement or custody of the child in a timely manner (see Matter of Jazmyne II. [Frank MM.], 144 AD3d 1459, 1460-1461 [2016], lv denied 29 NY3d 901 [2017]; Matter of Marquise JJ. [Jamie KK.], 91 AD3d 1137, 1139-1140 [2012], lv denied 19 NY3d 801 [2012]). Because it is not viable for the child to be in long-term foster care until the mother is released from prison, Family Court properly adjudicated the child permanently neglected (see Matter of Duane FF. [Harley GG.], 154 AD3d at 1088; Matter of Marquise JJ. [Jamie KK.], 91 AD3d at 1140).
Turning to the dispositional hearing, DSS presented evidence showing that the child had been placed with a preadoptive foster family for more than two years, was doing well and had bonded with them. The mother testified that she intended to enter a shock incarceration drug treatment program that would permit her to be released from prison early, but she had not yet been accepted, and completion of the program did not guarantee early release. Even if she was [*5]released early, she would still need to obtain stable housing and employment before she would be ready for the child to live with her. Family Court reasonably concluded that no suitable relative was available to take custody of the child until the mother was prepared to regain custody, which would be at least a year but probably longer. Although the mother maintained contact with the child through phone calls and visits and bonded with him, we cannot say that the court erred in concluding that it would be in the child's best interests to terminate the mother's parental rights and free the child for adoption (see Matter of Duane FF. [Harley GG.], 154 AD3d at 1088; Matter of Walter DD. [Walter TT.], 152 AD3d at 898; Matter of Bayley W. [Patrick K.], 146 AD3d 1097, 1101 [2017], lv denied 29 NY3d 907 [2017]; Matter of Jazmyne II. [Frank MM.], 144 AD3d at 1461).
Additionally, there is a sound and substantial basis in the record to support Family Court's denial of the grandmother's petitions for custody and visitation. It is appropriate for Family Court to consider a grandparent's custody petition in the context of a dispositional hearing after a child is adjudicated permanently neglected (see Matter of Weiss v Weiss, 142 AD3d 507, 508 [2016]; Matter of Carolyn S. v Tompkins County Dept. of Social Servs., 80 AD3d 1087, 1088 [2011]). A finding that a child has been permanently neglected establishes the extraordinary circumstances that confers standing on grandparents to seek custody (see Matter of Wendy KK. v Jennifer KK., 160 AD3d 1059, 1059-1060 [2018]; Matter of Carolyn S. v Tompkins County Dept. of Social Servs., 80 AD3d at 1088). At a combined dispositional and grandparent custody hearing, the sole inquiry is the best interests of the child (see Domestic Relations Law § 72 [2] [a]; Family Ct Act §§ 623, 631; Matter of Carolyn S. v Tompkins County Dept. of Social Servs., 80 AD3d at 1089). Family Court appropriately denied the grandmother's petition for custody because she had a 15-year history of drug abuse and required a substantial amount of effort to maintain her sobriety, was on parole after her conviction for selling drugs, relied on temporary assistance as her sole source of income, had known that the mother was smoking marihuana as a teenager but did not appropriately address that situation, and had an indicated Child Protective Services report for inadequate guardianship of the mother. Additionally, DSS informed the court that, after the hearing concluded but before a decision was rendered, the grandmother had been reincarcerated due to a parole violation, making it impossible for her to take custody of the child.
Family Court has discretion when considering a grandparent visitation petition. A grandparent seeking visitation must establish, as relevant here, "that conditions exist which equity would see fit to intervene" and that visitation would be in the best interests of the child (Domestic Relations Law § 72 [1]). The better course here would have been for Family Court to consider the grandmother's visitation petition during the pendency of the permanent neglect petition. Nevertheless, we cannot find that Family Court abused its discretion when it denied the grandmother any visitation, for the same reasons that she was not entitled to custody and because the child had found stability with his adoptive foster family (see Matter of Wendy KK. v Jennifer KK., 160 AD3d at 1061; Matter of Carolyn S. v Tompkins County Dept. of Social Servs., 80 AD3d at 1088-1091).
Finally, we reject the mother's and the grandmother's arguments that Family Court was biased against them, abused its discretion in denying a recusal motion and improperly delegated authority to DSS.
Lynch, Devine, Clark and Rumsey, JJ., concur.
ORDERED that the appeal from the amended order entered February 23, 2016 is dismissed, without costs.
ORDERED that the order entered August 18, 2016 is affirmed, without costs.



Footnotes

Footnote 1:Family Court granted DSS's petition to terminate the father's parental rights based on abandonment. 

Footnote 2:Despite the mother's argument that Family Court prevented her from making an offer of proof, the court asked about the intended purpose of the grandmother's testimony and counsel explained that purpose. The court did not err in precluding the mother from making a further offer of proof outside the presence of the other parties and counsel, as the mother requested.